Dale PATCH, Marvin Robinson, and Wayne Lunders, as individuals; and Dale Patch, Marvin Robinson and Wayne Lunders, representing the class of all others similarly situated, Appellees,

v.

CIVIL SERVICE COMMISSION OF the CITY OF DES MOINES, and the City of Des Moines, Appellants,

Personnel Decisions, Inc., Intervenor-Appellant.

No. 64265.

Supreme Court of Iowa.

Aug. 27, 1980.

. . . . .

461

Earl W. Roberts, City Sol., Des Moines, for appellants Commission and City.

Richard J. Keenan of Thompson, Nielsen, Klaverkamp & James, P. A., Minneapolis, Minn. and Roger L. Ferris of Nyemaster, Goode, McLaughlin, Emery & O'Brien, Des Moines, for intervenor-appellant.

Arthur C. Hedberg, Jr., and Phillip C. Vonderhaar, Des Moines, for appellees.

Considered by REYNOLDSON, C. J., and LeGRAND, UHLENHOPP, ALLBEE, and McGIVERIN, JJ.

McGIVERIN, Justice.

This appeal involves a determination of the propriety of injunctive relief awarded against defendants Civil Service Commission of the City of Des Moines (Commission) and the City of Des Moines. The district

court permanently enjoined these defendants from selecting police sergeants on the basis of a written examination administered on December 12, 1978. The plaintiffs, Dale Patch, Marvin Robinson, and Wayne Lunders, Des Moines police patrolmen, initiated this action individually and as representatives of the class of all those who took and failed the examination. They alleged that the test did not conform to the mandate of section 400.9, The Code, and that the Commission violated its own rules in setting the cutoff point in the examination scores and in limiting examination of their answer sheets. The court found merit in these contentions and entered its injunction decree on October 25, 1979. The Commission and City appealed that decree to us, as did Personnel Decisions, Inc., a Minnesota corporation and developer of the test, which had intervened in the action. We reverse.

The following issues are presented for our review:

1. Whether the examination failed to comply with section 400.9(1), The Code, and ch. IV, section 1, of the Commission's rules, which require the examination to be practical in character, fairly test the ability of the applicant to discharge the duties of the position to which he seeks promotion, and be appropriate for the position classification involved;

2. Whether the selection by the Commission of the 49.5 percentile as a cutoff score complied with sound testing principles; and

3. Whether the post-exam evaluations substantially complied with the Commission's rules relative to verification of accuracy of scoring.

The Commission was required under section 400.11, The Code, to compile and certify to the city council a list of ten qualified persons for promotion to police sergeant, as well as a reserve list of ten names.

In the civil service promotion process for police sergeant, the Commission used the following weighted criteria: written examination 40 percent; oral examination 40 percent; supervisory rating 10 percent; and experience rating 10 percent. Those applicants who failed to score at the 49.5 percentile level on the written examination would receive no further consideration in the other phases of the promotion process.

Seventy-one applicants took the written examination. Thirty-one achieved a percentile score of 49.5 or higher. Those persons were eligible for further consideration for promotion. The others were not.

Plaintiffs started this litigation by filing in district court a petition for temporary and permanent injunctive relief, challenging the legal validity of the examination and alleging that they and those similarly situated would be irreparably harmed if the test results were used for promotion purposes. The petition also stated that plaintiffs had filed an appeal with the Commission challenging the use of the examination.

Following a hearing, a temporary injunction was issued by the court on January 23. Thereafter, Personnel Decisions, Inc. (PDI) filed a petition of intervention, asserting an interest in the litigation as developer of the test.

On March 12 the Commission denied plaintiffs' appeal. Plaintiffs then appealed to district court under section 400.27, The Code. That appeal and the injunction action were joined in district court. Iowa R.Civ.P. 22.

After an evidentiary trial de novo, the district court issued its findings of fact and conclusions of law. The court ruled: (1) the scoring of biographical questions on the examination was a violation of section 400.9, The Code, and ch. IV, section 1 of the Commission's rules because they were not "fair," "practical," or "appropriate" and did not relate to such matters as would fairly test the ability of the applicants to discharge the duties of the position to which they sought promotion; (2) the Commission violated ch. IV, section 1, of its rules by deciding that persons not achieving a score of the 49.5 percentile on the written examination would not be eligible for further consideration because it did not base the decision on sound testing principles; and (3) the Commission did not substantially comply with ch. IV, section 7, of its rules when

it refused to provide plaintiffs with answer sheets and the correct answers to enable them to verify the accurate grading of the test. After also finding irreparable harm and no adequate remedy at law, the court permanently enjoined the use of the written test results in the promotional process.

From this final judgment, the defendants and intervenor have appealed. The trial court's conclusions comprise the basic issues presented by this appeal. Factual elaboration, as necessary, will be provided in addressing each issue.

I. *Scope of review.* Generally, appellate review of a grant or denial of injunctive relief, sounding in equity, is de novo. *Iowa State Department of Health v. Hertko*, 282 N.W.2d 744, 749 (Iowa 1979); Iowa R.App.P. 4. Section 400.27 allowed plaintiffs' appeal from the Commission's ruling to the district court. The statute provides that the "appeal shall be a trial de novo as an equitable action in the district court."

■ Therefore, we conclude that our review of plaintiffs' joined actions is de novo. Accordingly, we give weight to the fact findings of the trial court, but are not bound by them. Iowa R.App.P. 14(f)(7).

II. *Validity of the examination.* Section 400.9(1) provides the Commission shall "hold competitive promotional examinations . . which examinations shall be practical in character, and shall relate to such matters as will fairly test the ability of the applicant to discharge the duties of the position to which he seeks promotion." Section 400.-9(2) allows the Commission to establish guidelines for conducting the examinations and to hire persons with expertise to prepare the examination if the Commission approves the test. Chapter IV, section 1, of the Commission's rules and regulations required that the testing method be "appropriate for the position classification involved."

The court found that the biographical portion of the police sergeant exam violated section 400.9 because it was "not practical in character" and did not relate to such matters as would "fairly test the ability of

the applicant(s)"; and the commission's rule was violated because that portion of the test was not "appropriate for the position."

This written multiple-choice examination, named Police Career Index, was developed by PDI, a psychological testing firm, based on extensive research, field work and statistical analysis. PDI sold the exam to the Commission, which approved it and administered the exam to plaintiffs. The test consisted of two general parts. The first part of 357 questions had a section of 116 background or biographical information questions. Another section covered likes and dislikes. A third section involved opinion and self-description inventory. The second general part contained several questions relating to a situational judgment inventory.

The background information section of the examination included questions on family size, presence of tattoos, employment background, high school activities, and sensitivity and attitudes toward self and others. Plaintiffs take particular exception to the following list of questions which they testified were in the exam:

1. Did you have sex before you were 16?

2. Did you have a tattoo before you were 16?

3. Did your parents fight while you were in high school?

4. How many brothers and sisters do you have?

5. How many brothers and sisters did you have?

6. What is your age?

7. What is your sex?

8. What is your race?

9. What sports did you participate in while in high school?

10. What was your grade average in high school?

11. What level of higher education did you obtain?

12. What is your height and weight?

13. How many hours sleep do you need?

14. Were you president of the student body?

15. What was the size of your graduating class in high school?
16. What did you want to be as a child?
17. How many jobs have you had?
18. Did you work while in school?
19. Were you on the student council in high school?

We have examined the test given the applicants and agree those questions were asked in substance, although not in the form quoted above.

Plaintiffs contend those questions and their subject matter are not practical or related to job competence and therefore violate the statutory limitations on testing.

Plaintiffs also challenge a few questions in the situational judgment portion of the test that presented situations where a written standard operating procedure of the Des Moines Police Department directly applied but was not among the test's available answers.

■ Evidence by the Commission and PDI showed that the examination has been "validated," *i. e.* a statistical correlation has been established between answers to test questions and successful job performance by police sergeants. The Commission needed to measure leadership and supervisory ability. This particular test was "validated" or shown to be job related, *see Griggs v. Duke Power Co.,* 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971); *Wilson-Sinclair Co. v. Griggs,* 211 N.W.2d 133, 140 (Iowa 1973), by the "criterion" method in which a test is given to a sample of individuals, in this case current police sergeants including some in Des Moines, whose job performances are then evaluated by their superiors. The test results are then examined to establish any correlation between certain test answers and successful job performance. This method of evaluation is generally accepted in the statistics field and is favored by the Federal Guidelines on Employee Selection Procedures. 29 C.F.R. § 1607.5(A) (1979). *See United States v. New York,* 475 F.Supp. 1103 (N.D.N.Y.1979); C. Goodman, *Handbook on Public Personnel Law* 185–86 (1978); R. Vaughn, *Principles of Civil Ser-*

*vice Law* § 3.3 (1976). *But see McKenna v. Fargo,* 451 F.Supp. 1355, 1375–76 (D.N.J. 1978), *aff'd,* 601 F.2d 575 (3rd Cir. 1979) (pointing out limitations of validation studies based on existing work force). The current state of the testing science indicates acceptance of this method to show job relatedness or validity.

■ We have said concerning the civil service commission "a wide discretion must necessarily be allowed in the performance of its duties." *Jenney v. Civil Service Commission,* 200 Iowa 1042, 1044, 205 N.W. 958, 959 (1925). We also approve the following from 15A Am.Jur.2d *Civil Service,* § 40 (1976):

The general proposition is well established that a commission with the powers conferred upon a civil service commission in the examination of applicants for public employment has a wide discretion with regard to the manner of performing its duties and exercising its powers, particularly in determining the mode and practicality of the examination. [footnote omitted]

Of course, the civil service commission cannot act in an arbitrary, capricious or unreasonable fashion. *Id.; Herbert v. State Civil Service Commission,* 162 N.J.Super. 449, 452, 393 A.2d 589, 591 (Super.Ct.1978), *cert. denied,* 79 N.J. 461, 401 A.2d 218. In defining the limitations of a civil service commission's power, it has been said that a commission's actions must be upheld if there are any fair or reasonable grounds to sustain its actions. *Zicherman v. Department of Civil Service,* 40 N.J. 347, 351, 192 A.2d 566, 568 (1963); *Walters v. Clark,* 53 App. Div.2d 1012, 1013, 386 N.Y.S.2d 586, 587 (1976). Of course agency action, to be valid or legally permissible, must be within the legislative grant of authority, *Iowa Department of Social Services v. Blair,* 294 N.W.2d 568, 569–70 (Iowa 1980), and not contrary to any limitations which the agency or commission may have properly established by rule.

■ We conclude we should defer to the judgment of the Commission in test selection in the present case. *Cf. Charles City*

*Education Association v. Public Employment Relations Board,* 291 N.W.2d 663, 666 (Iowa 1980) ("We give weight to the agency's construction of a statute, although we are not bound by such an interpretation . . . ."). The evidence on the correlation between test answers to the Police Career Index and employment performance provides an adequate basis for concluding that the examination tests the aptitude an applicant may have for the leadership and supervisory position of police sergeant.

While we think the relevancy of a few of the biographical questions to the duties of police sergeant may be open to debate, "we cannot say that the examination as a whole was not 'practical in character' or that it did not 'relate to matters which will fairly test the relative capacity of the person examined to discharge the duties of the position to which he seeks appointment.'" *Zicherman,* 40 N.J. at 352, 192 A.2d at 568–69. In reaching this conclusion, we give due deference to the Commission's expertise on such matters and further note that the burden of proving invalidity is on plaintiffs. Iowa R.App.P. 14(f)(5). On the same basis, we do not believe the number of challenged situational judgment questions were of such magnitude as to invalidate the examination. *See Zicherman,* 40 N.J. at 352, 192 A.2d at 568.

We hold that plaintiffs failed to establish by a preponderance of the evidence that the written examination as a whole violated the testing requirements of section 400.9(1), The Code, and ch. IV, section 1 of the Commission's rules.

III. *Selection of the cutoff score.* Plaintiffs contend the setting by the Commission of the 49.5 percentile of the national norm as the cutoff score did not comply with sound testing principles. However, we believe determination of a cutoff score lies within the discretion of the Commission, *Jenney,* 200 Iowa at 1044, 205 N.W. at 959; *Herbert,* 162 N.J.Super. at 452, 393 A.2d at 591; 15A Am.Jur.2d *Civil Service* § 45 (1976), and that plaintiffs did not show an abuse of that discretion.

Section 400.9(2), The Code, provides in part "[t]he commission shall establish guidelines for conducting the examinations . . . ." Chapter IV, section 1 of the Commission's rules states:

> The examination may consist of one or more parts. The Commission shall determine the qualifying grade for each part of an examination as well as the combined grade for all parts of the examination based on sound testing principles. Failure to pass any part or parts of the examination may be deemed sufficient reason to disqualify the applicant for further consideration on the particular examination involved.

Proper considerations in determining an appropriate cutoff score are validity of the test, number of positions to be filled and prospective or anticipated size of the applicant pool. United States Civil Service Commission, Technical Memorandum 77–4 at 2 (citing L. Cronbach, *Essentials of Psychological Testing* (3d Ed. 1949)).

In accord with section 400.11, The Commission would be certifying a list of only ten names, and a reserve list of ten, for promotion. Seventy-one persons took the exam. The Commission could reasonably determine that those of the applicant pool who did not score at the 49.5 percentile (representing roughly the average score of all those taking the test nationwide) would not have a chance of making the certified lists. Eliminating them from consideration in the seniority, supervisory evaluation and oral examination steps of the evaluation process would also save the Commission a considerable amount of time and prevent unreasonable delay in certification of a list.

The burden of proof regarding the alleged nonexistence of sound testing principles for the cutoff level was on the plaintiffs as the moving party. Iowa R.App.P. 14(f)(5). Plaintiffs contend the Commission was only "guessing" when it fixed the cutoff score because this exam had not previously been given in Des Moines. However, we believe plaintiffs have failed to meet their burden of proving the aforementioned considerations used by the commission to

fix a cutoff score were inconsistent with sound testing principles.

We hold the court erred in concluding the Commission violated its rules in fixing the cutoff score for this examination.

IV. *Verification of accuracy of scoring the examination.* Chapter IV, section 7, of the Commission rules provides in part:

> Applicants may inspect their own answer sheets under supervision and any errors in grading shall be corrected if brought to the attention of the Commission within two weeks following notification of results, but such errors shall not invalidate any appointment previously made. In order that the Commission may use commercial examinations where appropriate, applicants may not inspect test booklets.

After plaintiffs failed the exam, they were allowed to see their actual test answer sheets and a computerized score card of their answers. Also, they were given an oral evaluation of their test performance based upon interpretative information received by the Commission from PDI. Plaintiffs demanded an answer key of the correct answers to this multiple-choice test to compare with their answer sheets. Defendants and PDI refused because honoring that request would compromise the security of the examination and give plaintiffs an unfair advantage over other applicants by allowing them the potential to pool their memories to get correct answers in the future. PDI double-checked the scoring of plaintiffs' answer sheets and determined they were accurately graded. However, the court ruled plaintiffs were entitled to compare their answers with the correct answers under supervision as per the Commission's rule.

Defendants assert they substantially complied with the Commission rule. *Cf. Anstey v. Iowa State Commerce Commission,* 292 N.W. 380, 385–86 (Iowa 1980) (substantial compliance with statutory notice requirements by Commission legally adequate).

■ The rule provides that applicants may not inspect test booklets of commercially prepared examinations. The rule also provides that applicants may inspect their own answer sheets, which they did. We do not find the construction of the rule advanced by the Commission, which is entitled to deference, to conflict with the language or the evident purpose of the rule. Such a construction is reasonable, within the authority of the Commission and necessary to preserving the security and resulting usefulness of the examination. Additionally, it has been recognized that there is not the same risk of arbitrariness in grading in the use of objective multiple-choice tests as inheres in the use of essay examinations. *Lavash v. Kountze,* 473 F.Supp. 868, 870 (D.Mass.1979), *aff'd,* 604 F.2d 103 (1st Cir. 1979).

The court erred in granting an injunction based on alleged violation of this Commission rule.

V. For the reasons stated in the above divisions, we reverse the decree of the district court and dissolve the injunction preventing defendants from selecting police sergeants based upon the results of the examination of December 12, 1978.

REVERSED.

All justices concur except LeGRAND, J., who dissents.

LeGRAND, Justice (dissenting).

I agree with the trial court's conclusion that the examination violated section 400.9, The Code. I therefore dissent from Division II of the court's opinion.

I would affirm the judgment of the trial court.