Gary A. McCORMACK,
Plaintiff-Appellant,

v.

CIVIL SERVICE COMMISSION of the
CITY OF CEDAR FALLS,
Defendant-Appellee.

No. 2-65658.

Court of Appeals of Iowa.

Nov. 24, 1981.

Robert L. Rausch of Cutler & Rausch, Waterloo, for plaintiff-appellant.

David J. Price of Price, Correll & Sheerer, Cedar Falls, for defendant-appellee.

Heard by OXBERGER, C. J., and DONIELSON, CARTER and JOHNSON, JJ.

CARTER, Judge.

Plaintiff-appellant-police officer appeals from a decision by the district court affirming the decision of the civil service commission upholding his discharge. He argues that the commission's decision was not supported by substantial evidence, his removal was arbitrary, capricious, and an abuse of discretion, previous incidents for which he had been disciplined were improperly used to prove current misconduct, and incidents other than ones of which the officer had notice were considered by the trial court to find misconduct. We affirm the trial court's judgment.

Plaintiff-appellant Gary McCormack, at the time of his discharge, was a civil service employee employed by the city of Cedar Falls, Iowa. Beginning in February 1979 a series of incidents occurred involving plaintiff which culminated in his discharge by the Cedar Falls police chief. On May 16, 1979, pursuant to section 400.19, The Code, the chief sent a letter to the mayor of the city enumerating his reasons for the discharge. The civil service commission upheld the dismissal, as did the district court on appeal in a decree filed August 8, 1980. The trial court agreed with the police chief that while perhaps no single incident was sufficient to warrant discharge, the cumulative effect of a series of incidents constituted sufficient violation of section 400.19, The Code, to justify dismissal of the plaintiff by the city.

The incidents culminating in plaintiff's discharge for misconduct began in February 1979 when McCormack, on duty and in uni-

form, was observed by a fellow officer sitting in his patrol car for approximately 45 minutes with one Ruth Beckham, a married woman, outside a bar in which she worked after it had closed for the night. Plaintiff received a verbal warning from his superior officer for this occurrence, but thereafter, on most nights when he was working, McCormack continued to meet with Mrs. Beckham during his coffee break at a restaurant. He was observed on these occasions and seen to hold her hand and, on at least one occasion, to have his hand on her leg. During all these events he was in uniform.

Superiors warned plaintiff about the impropriety of his continuing relationship with Mrs. Beckham. David Beckham, her husband, complained about these contacts and requested of plaintiff that he stay away from his wife. Mr. Beckham testified that plaintiff's response was to threaten him with arrests for serving liquor after hours (Beckham was the proprietor of a bar) and drunk driving, as well as threatening to close down the bar. Mr. Beckham testified that he was afraid of McCormack.

On April 14, 1979, Mrs. Beckham arranged to have a birthday cake for plaintiff at the restaurant during his coffee break. By this date, Mr. and Mrs. Beckham were living separately. A short time later, plaintiff called Mrs. Beckham to thank her for the cake. At this time she informed plaintiff that her husband had called to say he was on his way over to see her and he sounded drunk. Plaintiff thereafter left his assigned duty area, went to Mrs. Beckham's home, threatened her husband with arrest, but did not arrest him.

In the early hours of April 25, 1979, David Beckham requested Officer Bass, off duty at the time, to stay with him at closing time and escort him home. They drove together for a time, and then Officer Bass turned off to his home. Soon after, Beckham realized he was being followed by a police car which attempted to stop him. Initially, Beckham pulled over, but upon determining that the car contained Officer McCormack, he drove off again and attempted to reach the police station. Another officer joined in the chase, and Beckham then pulled over. The fellow officer testified that McCormack arrested Beckham using excessive force. The other officer then intervened and transported Beckham to the police station. McCormack charged Beckham with OMVUI, but after Beckham was observed at the police station by several other officers, they decided he was not intoxicated and did not permit the charge to be filed. It was after this incident that the police chief began his detailed investigation resulting in McCormack's discharge May 16, 1979.

The substance of the reasons for McCormack's discharge, as delineated in the May 16th letter sent by the police chief to the mayor, is as follows:

1. McCormack sitting in patrol car for approximately 45 minutes with married female, while on duty.
2. The April 14 incident when McCormack was caught at same woman's home.
3. Drinking after hours.
4. April 25 arrest of Mr. Beckham after threats and with insufficient grounds.
5. The continuing relationship with a married female.

■ I. Plaintiff first argues here that the trial court's decision upholding the dismissal was not supported by competent, material, substantial evidence. He claims that the five main incidents outlined above were either not violative of any specific rule or regulation or were not supported by the record as a whole. At the outset we note that, pursuant to section 400.27, The Code, review by the district court was de novo as is ours. Therefore, we will give weight to the district court's findings of fact although we are not bound by them. Iowa R.App.P. 4; *Matter of Fairbanks*, 287 N.W.2d 579, 581 (Iowa 1980).

■ Section 400.19, The Code, provides in pertinent part:

The person having the appointing power as provided in this chapter, or the chief of police and the chief of the fire department may peremptorily suspend, demote,

or discharge any subordinate then under his direction, for neglect of duty, disobedience of orders, misconduct or failure to properly perform his duties.

Despite proof offered by defendant to show that he continued to perform several police officer duties during the months in question to a high degree, such as writing tickets or giving citations, the court interpreted section 400.19 to require more of a police officer than the simple achieving of a quota. The trial court found and we agree that the statute requires qualities of conduct, attitude and integrity seemingly absent on the part of plaintiff during crucial circumstances. Specifically, the court found that plaintiff's actions in continued involvement with a married woman despite warnings or advice from superior officers, his making of statements to citizens which were perceived as veiled threats, and his behavior in leaving his assignment area in the handling of a domestic matter constituted misconduct. The court also found plaintiff was evasive and uncooperative in answering questions by the police chief concerning alleged transgressions. All of the incidents together were found to violate section 400.19 and constitute misconduct, justifying discharge.

We have considered the trial court's findings of facts and conclusions of law filed after an exhaustive hearing. We have read the record as a whole and, in so doing, conclude that the trial court's decree is well-supported by competent, material, and substantial evidence.

II. Defendant next argues that his discharge was arbitrary, capricious and an abuse of discretion. In support of this contention he argues that the Cedar Falls Police Department had no written guidelines pertaining to discipline, that discipline within the force was applied inconsistently, that his performance as an officer was not affected by any of these incidents, and that he did not violate any police department rule or local law. The city concedes there were no relevant rules encompassing defendant's actions, but argues that under any conceivable set of guidelines defendant's behavior constituted misconduct.

Officer McCormack was not discharged under any police department rule; rather, his behavior was found to be misconduct under the statute previously set out, section 400.19, The Code. A noncriminal statute is unconstitutionally vague under due process when its language does not convey sufficiently definite warning as to proscribed conduct when measured by common understanding or practice. *Arnett v. Kennedy*, 416 U.S. 134, 158–64, 94 S.Ct. 1633, 1646–47, 40 L.Ed.2d 15, 36 (1974). Our supreme court has ruled that the term "misconduct" passes constitutional muster because the term has readily recognized meaning in the civil service setting. *Millsap v. Cedar Rapids Civil Service Commission*, 249 N.W.2d 679, 684–85 (Iowa 1977). We find that the statute gave defendant sufficient notice that the behavior in which he chose to indulge would be misconduct. It is true that neither the police chief nor the commission can act in an arbitrary, capricious, or unreasonable fashion; their actions must be upheld if there are any fair or reasonable grounds upon which to sustain them. *Patch v. Civil Service Commission of the City of Des Moines*, 295 N.W.2d 460, 464 (Iowa 1980). The district court upheld the determination of the police chief and the civil service commission after hearing all of the evidence. We reach the same determination on our de novo review.[1]

III. Defendant next contends that any previous incidents for which he had been disciplined or reprimanded cannot be used by either the police chief or the civil service commission to find present misconduct. Defendant relies upon *Stanton v. Board of Fire & Police Commission of the Village of Bridgeview*, 37 Ill.App.3d 108, 345 N.E.2d 822 (1976), and *Dutcher v. De-*

1. In reaching this determination, we have considered plaintiff's contention that other officers have committed similar offenses but received inconsistent treatment. We have considered this argument, but find no merit in it, since any appointing authority may treat individual situations individually and still not abuse its latitude of discretion. *Patch v. Civil Service Commission of the City of Des Moines* at 464.

*partment of Civil Service,* 7 N.J.Super. 156, 72 A.2d 393 (1950), to support his proposition. *Stanton,* however, merely says that one cannot be found guilty of a present infraction when the only evidence of the present misconduct is the fact that a person previously committed a similar act. And *Dutcher* specifically allows evidence of prior punished acts of misconduct to show a person's general attitude of insubordination. In the present case we see no reason for the trial court not to have considered defendant's behavior as a whole.

■ IV. Defendant's final contention is that the trial court considered additional incidents other than those identified at the time of his discharge. It is true that a person being discharged is entitled to have the reasons for such action in writing, and section 400.19 requires these reasons to be sent to the mayor and filed with the clerk of the commission. Defendant does not deny being apprised of the contents of the letter sent to the mayor; rather, he seems to argue that the evidence used by the trial court is different from that contained in the letter.

We think any discrepancy between the contents of the letter and the opinion of the trial court lies only in the language chosen by each, not in the substance of either. In fact, the court specifically found that one of the grounds in the letter, drinking after hours, had not been proven at trial. The record indicates that the mayor, the commission, and the trial court all considered only the incidents of which defendant had notice as delineated in the police chief's letter and all evidence pertinent thereto.

We have considered all of the defendant's arguments but are in agreement with the trial court. The purpose of civil service statutes and police department rules regulating the discipline of policemen for misconduct and conduct unbecoming police officers is not only for the punishment of the officer but also for the protection of the public. 16 McQuillin, *Municipal Corporations,* § 45.06b at 584 (3rd ed. 1972). "The public has a right to have for peace officers men of character, sobriety, judgment, and

discretion." *Edwards v. Civil Service Commission,* 227 Iowa 74, 80, 287 N.W. 285, 288 (1939). Defendant was guilty of a series of incidents showing extremely poor judgment, reflecting badly upon the police department, and evidencing an abuse of power. His failure to heed prior warnings with respect to this conduct gave his superiors no reason to believe that this pattern of behavior would not continue. We think the record as a whole supports the decision of the trial court in upholding defendant's dismissal and discharge as a police officer.

AFFIRMED.