David SIEG, Appellee,

v.

CIVIL SERVICE COMMISSION OF the
CITY OF WEST DES MOINES,
Iowa, Appellant.

No. 69638.

Supreme Court of Iowa.

Dec. 21, 1983.

Jack W. Rogers of Putnam, Putnam & Rogers, Des Moines, for appellant.

Neil A. Barrick, Robert E. Conley, P.C., Des Moines, for appellee.

Considered by REYNOLDSON, C.J., and UHLENHOPP, McCORMICK, SCHULTZ and WOLLE, JJ.

SCHULTZ, Justice.

The Civil Service Commission of the city of West Des Moines, Iowa, (Commission) appeals from a district court judgment reversing the Commission's decision to terminate the employment of David Sieg, a West Des Moines policeman. After a trial de novo, pursuant to Iowa Code section 400.-27, the district court ordered Sieg reinstated as a police officer with full seniority rights, back pay, and fringe benefits. Although the trial court determined that Sieg was guilty of misconduct, it concluded that termination was too harsh since Sieg's actions were not such a substantial shortcoming that his continued employment as a police officer would impair the discipline and efficiency of the police department. Because we disagree with these conclusions, we reverse.

The present controversy was precipitated by a previous one-day suspension received by Sieg in November of 1981. Sieg, who had been employed three years as a patrolman, was on duty with a senior patrolman, Ronald Woods. The event that led to the suspension occurred when Sieg drove his patrol car away from a gas pump while the hose was still connected to the car. As a result, the hose was torn away from the pump and the car was slightly damaged. Because of this incident, Woods recommended that Sieg be suspended for one day.

After the suspension, Sieg apparently made it obvious that he was displeased with Woods. When his sergeant learned of the animosity, he warned Sieg not to take matters into his own hands and advised him to pursue proper avenues if he felt he had been wronged by the suspension. The sergeant testified that during this conversation, Sieg referred to Woods "as a little s.o.b. or words to that effect" and that after the warning, Sieg responded "you gotta do what you gotta do."

Shortly after the talk with his sergeant, Sieg, in the presence of another officer, confronted Woods in the locker room of the police station prior to going on duty. In particular, he demanded an explanation from Woods concerning his recommendation to suspend Sieg for the gas pump incident. Woods indicated that it was an asinine stunt. Sieg then let loose a torrent of profane and sexual epithets. While we do not feel a need to repeat verbatim this derogatory gutter language, essentially, Sieg referred to Woods in the most base and demeaning terms and impliedly threatened to get even with him for recommending Sieg's suspension. Woods testified that he construed these comments as disrespectful, discourteous, and a threat.

Woods reported the locker room incident to his superior, a sergeant. Following an

investigation, the sergeant concluded that Sieg failed to utilize the prescribed procedure for appealing his one-day suspension, threatened Woods and violated police regulations. The sergeant and a police lieutenant subsequently recommended to the police chief that Sieg be given a 30-day suspension and placed on probation for one year. After complying with the required procedures, this recommendation was put into effect.

When the lieutenant informed Sieg of his suspension, Sieg replied, "What? ... I can't believe it! I don't have any respect for the chief or the lieutenants, including you." The lieutenant asked him to leave the office, and Sieg expressed his irritation noting that "this will be in the paper." He then made remarks to another officer who was standing nearby and threw the suspension letter at him and stated, "Read this, ... this is a circus around here."

Sieg appealed his suspension to the Commission. After an evidentiary hearing, the Commission concluded:

The coarse, profane, indecent and insolent language used by Officer David Sieg and directed to Officer Douglas Woods, acting supervisor, while in the locker room of the Public Safety Building constituted disrespect and discourtesy to a superior officer, and insubordination.

Officer David Sieg's actions constituted misconduct and disobedience within the meaning of Chapter 400.18 of the Code of Iowa.

Insolence, disobedience, misconduct, insubordination, and disrespect and discourtesy to superior officers, cannot and should not be tolerated within the Police Department of the City of West Des Moines.

In view of these findings, the Commission modified the department's decision to suspend Sieg and instead ordered his termination.

Sieg next appealed to the district court and asked that the Commission's decision be reversed, that he be reinstated with full compensation for the period of his suspension and removal, and that he be granted other equitable relief. In his petition he claimed that the Commission's decision was arbitrary, capricious, and not supported by substantial evidence, and that it violated his right of free speech as guaranteed by the Constitution of the United States. After a trial de novo, the district court agreed that Sieg's actions constituted misconduct, but it overruled the Commission's decision to terminate him.

The final ruling or decision of the Civil Service Commission is appealable to the district court. Iowa Code § 400.27. When appealed, the matter is heard de novo by the district court as an action in equity. *Id.* Our review of the district court's ruling is de novo and though we give weight to the trial court's findings of fact, we are not bound by them. *Millsap v. Cedar Rapids Civil Service Commission*, 249 N.W.2d 679, 684 (Iowa 1977).

At this point, we note that Sieg has not challenged the procedures adopted by the Commission in effecting his discharge or even its authority to substantially increase his punishment and terminate him. The Commission does have original jurisdiction to suspend, demote, or discharge a police officer for neglect of duty, disobedience, misconduct, or failure to properly perform his duties. Iowa Code § 400.18. This power is separate from and independent of the authority of the appointing power or police chief to peremptorily suspend, demote, or discharge a subordinate officer for the same reasons. Iowa Code § 400.19. Prior cases suggest that the Commission also has the power to remove an officer even though the appointing power or chief did not peremptorily remove him or concur in the discharge. *See, i.e., O'Conner v. Youngblade*, 250 Iowa 808, 812–13, 96 N.W.2d 457, 460 (1959); *Fetters v. Guth*, 221 Iowa 359, 365, 265 N.W. 625, 628 (1936); *Mohr v. Civil Service Commission*, 186 Iowa 240, 245, 172 N.W. 278, 279 (1919). Since Sieg did not raise this issue, it is not properly before us, and we have no occasion to discuss the propriety of the procedures employed by the Commission to effect his discharge. We now turn to a

consideration of the issues properly raised by this appeal.

I. The Commission contends the trial court erred in failing to uphold its decision since there were fair and reasonable grounds upon which to sustain them. Specifically, the Commission claims, citing *Patch v. Civil Service Commission of the City of Des Moines*, 295 N.W.2d 460 (Iowa 1980) and *McCormack v. Civil Service Commission of Cedar Falls*, 315 N.W.2d 855 (Iowa App.1981) that the district court is bound to give weight to its decision. The district court and Sieg, on the other hand, indicate that the trial court should give weight to the Commission's findings but is not bound by them. They cite *Millsap v. Cedar Rapids Civil Service Commission*, 249 N.W.2d 679 (Iowa 1977). We cannot agree with the Commission's assertion or Sieg's concession that it is mandatory on the district court to give weight to the Commission's decision or findings when it acts in an adjudicatory capacity.

By stipulation, the factual record made before the Commission constituted the record in the district court in *Millsap*. *Id.* at 681. However, the trial court still reviewed the entire record de novo. In reviewing the trial court's ruling, we made no statements that the lower court was required to give weight to the Commission's findings. We did indicate that our own review was de novo and that we give weight to the trial court's findings. *Id.* at 683. *See also Matter of Fairbanks*, 287 N.W.2d 579, 581 (Iowa 1980) (where we repeated this language without indicating the trial court should give weight to the Commission's determination). Consequently, *Millsap* cannot be read as requiring the district court to give weight to the Commission's findings. The Commission's reliance on *Patch* and *McCormack* is also misplaced.

The legislature has prescribed various duties to the Commission. It has given the Commission executive or administrative authority to act upon the examination of job applicants, Iowa Code § 400.8; on competitive promotional exams, Iowa Code § 400.9; and to certify names of qualified applicants to the appointing power, Iowa Code § 400.-11. The Commission also has adjudicatory and appellate responsibilities. For instance, the Commission has original jurisdiction to suspend, demote, or discharge civil service employees. Iowa Code § 400.-18. It also is empowered to hear appeals from peremptory suspension, demotion or discharge of civil service employees. Iowa Code § 400.20. When acting in an appellate capacity, the Commission may affirm, modify or reverse any case on its merits. Iowa Code § 400.27.

The Commission's decisions, both executive actions and adjudicatory rulings, are appealable to the district court. *Id.* Prior to 1969 such rulings were subject to challenge by certiorari, an action in which only legal questions rather than factual matters were reviewed. *Klein v. Civil Service Commission*, 260 Iowa 1147, 1150, 152 N.W.2d 195, 196 (1967). In 1969, however, the legislature amended the act to allow appeal from Commission decisions and expressly provided that "the appeal shall be a trial de novo as an equitable action." Acts 1969, 63 G.A. Ch. 226, § 1 (effective July 1, 1969, and now incorporated in § 400.27). Despite the statutory language in section 400.27 requiring a trial anew, the Commission insists the district court must afford the Commission wide discretion in the performance of its duties.

In matters involving executive or administrative functions, such as the preparation and conducting of a civil service examination, the district court, when reviewing such action, must allow the Commission wide discretion, even though its review is de novo. *Patch*, 295 N.W.2d at 464. "In defining the limitations of the Commission's power, it has been said that the Commission's action must be upheld, if there are any fair or reasonable grounds to sustain its action." *Id.* This language is consistent with the presumption of regularity that we afford administrative agency action. *Anstey v. Iowa State Commerce Commission*, 292 N.W.2d 380, 390 (Iowa 1980); *Johnson v. Board of Adjustment*,

*City of West Des Moines*, 239 N.W.2d 873, 887 (Iowa 1976); *Janson v. Fulton*, 162 N.W.2d 438, 442 (Iowa 1968).

The *Patch* decision involved judicial review of a Commission's actions when it was acting in an administrative capacity rather than an adjudicatory one. Although the court of appeals quoted *Patch* in reviewing a district court judgment affirming a Civil Service Commission's discharge of a policeman, *McCormack*, 315 N.W.2d at 858, we do not believe the *McCormack* court was correct in importing a standard of review reserved for actions involving the substantial expertise of the Commission into a situation in which the Commission was acting in an adjudicatory capacity and possessed no special expertise. Thus, we disavow that language in *McCormack*.

When statutory language expressly provides for a trial or hearing de novo, we believe this procedure must be distinguished from a review de novo. We reviewed these differences in *Mason v. World War II Service Compensation Board*, 243 Iowa 341, 344–45, 51 N.W.2d 432, 434 (1952), and pointed out that a review proceeding is usually confined to the record made in the lower tribunal. Conversely, a hearing de novo means the case is tried as if it had not been heard before. In *Mason*, we cited cases from other jurisdictions, indicating that a de novo trial contemplates evidence anew without any presumptions in favor of the agency's decision and the same as if no previous hearing had been held. *Id.* at 346, 51 N.W.2d at 435. We somewhat reluctantly followed the authority of *Mason* on a statutory de novo of a driver's license revocation. *Budda v. Fulton*, 261 Iowa 981, 984–85, 157 N.W.2d 336, 338 (1968). A distinguishing feature of a trial de novo as opposed to de novo review is that we do not afford a presumption of regularity to the factual determination by a board, agency, or commission. *Johnson Machine Works, Inc. v. Parkins*, 171 N.W.2d 139, 144 (Iowa 1969); *Budda*, 261 Iowa at 986, 157 N.W.2d at 339. *Cf. Weldon v. Zoning Board of City of Des Moines*, 250 N.W.2d 396, 401 (Iowa 1977) (zoning statutes pro-

vide for a review of the board of adjustment's decision by certiorari to the district court de novo and the certiorari goes to the legality of the board's action and the findings of fact of the board are binding on the district court); *Green v. Iowa Department of Job Service*, 299 N.W.2d 651, 655 (Iowa 1980) (review of final agency action under the Iowa Administrative Procedure Act is at law not de novo pursuant to Iowa Code § 17A.1). In a criminal appeal from a magistrate's decision pursuant to former Iowa Rule of Criminal Procedure 54 which provided for an appeal de novo, we held in *City of Webster City v. Draheim*, 292 N.W.2d 406, 409 (Iowa 1980), that a hearing de novo on appeal signifies that the case is heard anew, afresh, a second time, and that the appealing party was entitled to a new trial.

█ In conclusion, we hold that in an appeal under section 400.27 from an adjudicatory decision, rather than an executive decision involving the expertise of the Commission, the district court shall try the case anew and give no weight or presumption of regularity to the findings of the Commission. Here, the Commission, acting on appeal from a peremptory suspension pursuant to section 400.19, modified the relief by turning the suspension into a removal. They were acting in an adjudicatory capacity. The Commission's contention that its actions must be upheld if there are fair and reasonable grounds to sustain it are without merit.

█ II. Statutory authority for removal of a policeman is grounded on neglect of duty, disobedience, misconduct or failure to properly perform duties. Iowa Code §§ 400.18 and 400.19. Such suspension or dismissal must be for conduct detrimental to the public service. *Matter of Fairbanks*, 287 N.W.2d at 581; *Millsap*, 249 N.W.2d at 687; *Klein v. Civil Service Commission*, 260 Iowa 1147, 1156, 152 N.W.2d 195, 200 (1967). Although the trial court found Sieg guilty of misconduct, it further determined that his conduct did not constitute substantial shortcomings which

would render his continuance as an officer detrimental to the discipline and efficiency of the police department. We do not agree. While we normally give weight to trial court findings, where, as here, the facts are essentially undisputed and the credibility of witnesses is not a factor, we give no weight to its findings and draw our own conclusions and inferences from the record. *State Board of Social Welfare v. Teeters*, 258 Iowa 1113, 1114, 141 N.W.2d 581, 582 (1966); *Kaltoft v. Nielson*, 252 Iowa 249, 253, 106 N.W.2d 597, 599 (1960). Thus, we must determine anew whether Sieg's actions constitute a substantial shortcoming justifying his discharge.

A police officer does not have a constitutional right to his employment and is subject to reasonable supervision and restriction by his superiors so proper discipline may be maintained and the activities of officers do not disrupt or impair their public duties. *Klein,* 260 Iowa at 1156, 152 N.W.2d at 200. Rules and regulations are necessary to maintain order and discipline among officers and to ensure and improve public service. *Id.* The purpose of these rules is not merely punitive; it is also to protect the public. *Millsap,* 249 N.W.2d at 687. Since peace officers are charged with a public trust, the public has every right to expect these officers to conduct themselves with good character, sobriety, judgment and discretion. *Id.* Police departments are akin to paramilitary organizations, and discipline must be strictly enforced. *Klein,* 260 Iowa at 1156, 152 N.W.2d at 200.

In this case misconduct is present and the real question narrows to whether it was detrimental to public service. It is conceded that Sieg violated departmental rules in several respects. By making profane, derogatory and intimidating remarks to a fellow officer, he violated rules requiring officers to be courteous and civil to one another. His remarks to his sergeant and the lieutenant verify that the locker room incident was not the result of an unusual impulse or momentary lapse but rather demonstrate Sieg's consistent disregard for authority, restraint and good judgment.

His behavior betrayed the high standards of conduct expected of police officers and the compassion and harmony necessary for effective law enforcement. Although his outbursts occurred in semiprivate and not in the presence of the citizens of the community, these comments and conduct reflect poorly on Sieg's ability to meet the public. Sieg's actions attest to his lack of respect for his fellow human beings and exhibit a total lack of self control and discipline on his part. Such characteristics could reasonably be expected to extend beyond the confines of the police department to the public he is charged with serving. Taking the record as a whole, we cannot agree with the trial court's conclusion that Sieg's conduct was not detrimental to the public service. The question still remains whether Sieg's actions justify his subsequent discharge.

The trial court determined that proper punishment for Sieg's actions was the 30-day suspension handed out by the police chief and that termination by the Commission was grossly disproportionate to the misconduct involved. The Commission, on the other hand, contends termination was justified under the facts of this case.

As indicated, the statutory basis for sanctioning Sieg is "misconduct." The statutes do not set parameters on the quantity or quality of misconduct that should precipitate suspension or discharge. §§ 400.18 and 400.19. Misconduct is necessarily a broad term. It includes relatively minor or innocuous behavior such as the gas pump incident or more flagrant and injurious breeches of decorum such as that presented here. Consequently, we are faced with determining the proper legal consequences of Sieg's behavior without any statutory guidelines.

Our case law is also of little assistance. Prior to 1969, we were limited to reviewing the legality of the Commission's actions by certiorari rather than a de novo review of trial. Under the present appeal statute, the cases involving misconduct by police officers are relatively few. We did affirm the suspension and demotion of a police-

man who became intoxicated while off duty and who was abusive and combative when arrested. *Millsap*, 249 N.W.2d at 682. In *McCormack*, the court of appeals approved discharge of a policeman for his continued involvement with a married woman despite warnings from his superior, his making of statements to her husband which were perceived as veiled threats and his unjustified arrest of his girlfriend's husband. *Id.*, 315 N.W.2d at 858 (Iowa 1981). *See also Borlin v. Civil Service Commission of Council Bluffs*, 338 N.W.2d 146 (Iowa 1983) (where we approved dismissal of a police officer for defying orders and engaging in off-duty work which created a potential conflict of interest with his public duties).

If the profane outburst directed at Woods was an isolated incident, we would be inclined to agree with the trial court's conclusion that termination was not warranted. Instead, other evidence, received without objection and considered by the trial court, demonstrates the seriousness of Sieg's conduct. These facts reveal a consistent pattern of indifference to departmental rules and established procedures. They also demonstrate a hostile attitude to the authority and advice of superiors. Sieg did not heed the warning of his sergeant to pursue proper channels when he felt wronged by his initial suspension. Rather, he took matters into his own hands and confronted Woods. When he learned of his second suspension, he lambasted the lieutenant along with the entire police department. His deportment was so bellicose and offensive, the lieutenant finally had to order him out of police headquarters. His persistent hostile attitude and insubordination, coupled with the veiled threat to Woods, belie the trial court's conclusion that dismissal was not warranted.

Sieg cannot use his right to free speech to shield him from the consequences of his insolent behavior.

A municipal employee has an absolute obligation to perform satisfactorily the duties and work in his position. He may speak as he wishes but also must be responsible for his statements. When his speech is disruptive of the proper functioning of the public's business, the privilege of governmental employment may be withdrawn without it being said that he was denied freedom of speech. To hold otherwise would enable governmental employees to practice the rankest form of insubordination and safely hide behind the right of free speech. Accordingly subordinates and employees generally may be dismissed for insubordination.

*McQuillen Municipal Corporations* 3rd ed. 1979, § 12.240. These sentiments are especially pertinent to law officers since they must work closely together and depend upon each other for their safety. Discipline is a necessity in this kind of employment.

In sum, Sieg's actions and words show a complete lack of self discipline and control and indicate an unwillingness to follow instructions or respect authority. We conclude under the circumstances his dismissal was warranted.

All claims raised by the parties have been considered even though some were not addressed. Because of our holding, we do not reach the issues raised concerning compensation and fringe benefits upon reinstatement.

REVERSED.