**CERRO GORDO COUNTY,
Petitioner-Appellant,**

v.

**PUBLIC EMPLOYMENT RELATIONS BOARD, Public, Professional and Maintenance Employees, Local 2003, IBPAT, and Denzil Jones, Respondents-Appellees.**

No. 85–1749.

Court of Appeals of Iowa.

Aug. 27, 1986.

Mark L. McManigal, of Laird, Burlington, Heiny, McManigal, Walters & Winga, Iowa City, for petitioner-appellant.

Amy J. Mills and James H. Gilliam, Des Moines, for respondent-appellee Public Employment Relations Bd.

James E. Brick and Nancy Coon, of Brick, Seckington, Bowers, Swartz & Gentry, P.C., Des Moines, for remaining respondents-appellees.

Considered by OXBERGER, C.J., and SNELL, and SACKETT, JJ.

SACKETT, Judge.

Cerro Gordo County appeals the district court's affirmance of a Public Employment Relations Board ruling that County Care Facility employee Denzil Jones was discharged for union activities in violation of Iowa Code § 20.10(2)(a), (c) and (d) (1985), and order reinstating Jones. The county contends the district court erred in its decision and asserts (1) Jones was discharged by the County Care Facility due to insubordination; (2) there was substantial evidence in the record to support the discharge of Jones; and (3) Jones' discharge did not violate the Iowa Public Employment Rela-

tions Act, Iowa Code § 20.10(2) (1985). We affirm.

## I.

Denzil Jones was employed at the Cerro Gordo County Care Facility from 1976 until his discharge on April 11, 1984. At the time of Jones' discharge his personnel file contained no reprimands and approximately 30 days prior to his discharge Jones had been evaluated as "above average" in work performance.

Jones was a member of the Public, Professional and Maintenance Employees, Local 2003. He served as the chief union steward and spokesperson at the care facility and had been actively involved in enforcing the union contract, filing grievances on behalf of other employees, arbitrations and civil rights matters. One week prior to his discharge Jones had relayed a message from a union representative to care facility administrator Joan Smyth that the union intended to have the care facility investigated by the Iowa Attorney General if care facility supervisors failed to improve their treatment of employees. This message was given during a period of problems concerning grievance dispositions.

There was tension between the union and management at the care facility. In July, 1982, an administrative consultant Charles Duling was hired by the care facility to assist in improving programming, implementing court ordered changes and improving union-management relations. Duling had discussions with care facility administrator Joan Smyth and supervisor Debra Hightshoe. Duling testified later that he, Smyth and Hightshoe considered getting rid of Jones and the union because they believed the union was causing problems and was incompatible with management. The county subsequently eliminated Jones' position as a painter, alleging economic reasons and Jones was laid off.

Jones filed a grievance. A grievance arbitrator ruled Jones had been laid off in violation of seniority clauses in the collective bargaining agreement and reinstated

him to a housekeeper position with back pay in October, 1982.

In spring, 1983, care facility assistant administrator Jerry Steinbaugh told Jones the Cerro Gordo County Board of Supervisors was still out to get Jones.

In December, 1983, Jerri Dee Flage was hired at the care facility as director of nursing and Mary Canney was hired as a socialworker. Flage and Canney made changes in policy and procedures. Katherine Smail, part-time activities director, and Diane Warden, medication aide, disapproved of the changes. Smail and Warden made hostile comments about Flage and Canney in the employees' breakroom in the presence of other employees including Jones. Smail and Warden referred to Flage and Canney in derogatory terms such as whore, prostitute and bitch. Smail and Warden referred to Smyth as a toad, lame brain and idiot. Although Jones sat at the same table as Smail and Warden during breaks, he did not participate in name-calling. Jones did refer to Smyth as "big mama." Jones also told an employee he hoped Smyth would not be at the care facility after July, 1984.

Two employees told Canney about the breakroom comments. Canney reported the comments to Smyth and was told to get the employee complaints in writing.

After Smyth received written complaints from four employees, Smyth asked Jones and Warden to meet with her, Canney, Flage and C.W. McManigal, attorney for the care facility. Jones brought union representative Richard Williams to the meeting. At the meeting McManigal read the complaint letters. Based on the allegations in the letters Smyth discharged Jones, Warden and Smail.

On April 12, 1984, the union filed a prohibited practice complaint with the Public Employment Relations Board. The union alleged in its complaint the county had violated PERA Section 10.2 by terminating Jones, Smail and Warden for union activity.

Following a hearing a PERB hearing officer found the county had violated PERA

§ 10.2 by discharging Jones but that Smail and Warden were discharged for legitimate reasons. Both parties appealed portions of the hearing officer's decision. The PERB appeal board heard the appeal and unanimously affirmed the hearing officer's findings of fact and conclusions. Thereafter, Cerro Gordo County filed a petition for judicial review with the district court stating the appeal board decision should be reversed because it was in violation of constitutional or statutory provisions; in excess of PERB's statutory authority; unsupported by substantial evidence; and unreasonable, arbitrary, capricious or characterized by an abuse of discretion. The district court affirmed PERB's appeal decision, finding the appeal decision was supported by substantial evidence. Cerro Gordo County has appealed the decision of the district court. This appeal only concerns the discharge of Jones.

## II.

■ PERB is a state agency within the meaning of state agencies subject to the Iowa Administrative Procedure Act. *Jackson County Public Hospital v. Public Employment Relations Board,* 280 N.W.2d 426 (Iowa 1979); *City of Davenport v. Public Employment Relations Board,* 264 N.W.2d 307, 311 (Iowa 1978). Our scope of review in cases arising out of the IAPA is limited under Iowa Code § 17A.20 (1985) to the correction of errors of law. *Boyd v. Iowa Department of Job Service,* 377 N.W.2d 1, 2 (Iowa App.1985). We review the decision of the district court, also rendered in an appellate capacity, and determine whether the district court applied the law correctly. *Endicott v. Iowa Department of Job Service,* 367 N.W.2d 300, 302 (Iowa App.1985). To make that determination this court must apply the standards of Iowa Code § 17A.19(8) (1985) to the agency action to determine whether this court's conclusions are the same as those of the district court. *Boyd,* 377 N.W.2d at 2. Iowa Code § 17A.19(8)(f) (1985) provides in a contested case the court shall grant relief from an agency decision which is not supported by substan-

tial evidence in the record made before the agency when that record is viewed as a whole. *Myers v. Iowa Department of Job Service,* 373 N.W.2d 507, 509 (Iowa App. 1985). In making this determination we are limited to the record made by the hearing officer. *Boyd,* 377 N.W.2d at 2. We do not make an independent determination concerning the preponderance of the evidence. *Budding v. Iowa Department of Job Service,* 337 N.W.2d 219, 221 (Iowa App.1983).

■ Evidence is substantial when a reasonable person would accept it as adequate to reach a conclusion. *Eaton v. Iowa Department of Job Service,* 376 N.W.2d 915, 916–17 (Iowa App.1985); *City of Davenport,* 264 N.W.2d at 311. The question is not whether the evidence might support a different finding but whether the evidence supports the findings actually made. *Boyd,* 377 N.W.2d at 2. The fact two inconsistent conclusions can be drawn from the evidence does not mean one of those conclusions is unsupported by substantial evidence. *Myers,* 373 N.W.2d at 509.

## III.

In its complaint the union alleged Cerro Gordo County, through its agents and representatives, violated PERA § 10.2, Iowa Code § 20.10(2) (1985). In relevant part, § 10.2 provides it shall be a prohibited practice for a public employer willfully to:

a. Interfere with, restrain or coerce public employees in the exercise of rights granted by this chapter.

\*     \*     \*     \*     \*     \*

c. Encourage or discourage membership in any employee organization, committee or association by discrimination in hiring, tenure, or other terms or conditions of employment.

d. Discharge or discriminate against a public employee because he has filed an affidavit, petition or complaint or given any information or testimony under this chapter, or because he has formed, joined or chosen to be represented by an employee organization.

■ Section 10.2 imposes a prohibition on public employers which is simple to

state but often difficult to apply in practice: a public employer may not discharge an employee because of union activity. *See NLRB v. Transportation Management Corp.*, 462 U.S. 393, 103 S.Ct. 2469, 76 L.Ed.2d 667 (1983) (The PERA prohibited practices section is very similar to § 7 of the National Labor Relations Act). Public employers must apply their usual rules and disciplinary procedures and standards to a union activist just as they would to any other employee. *NLRB v. Wright Line, A Division of Wright Line, Inc.*, 662 F.2d 899, 901 (1st Cir.1981), *cert. denied* 455 U.S. 989, 102 S.Ct. 1612, 71 L.Ed.2d 848 (1982). Hence, in a given discharge case it must be decided whether the employer acted because of the employee's union activities or whether the employer acted because of some factor unrelated to the employee's union status. *Wright Line*, 662 F.2d at 901. The county contends it had valid reasons for discharging Jones.

■ Where legal and illegal motives for a discharge are alleged, PERB applies a dual-motive test. *Transportation Management Corp.*, 462 U.S. at 399–401, 103 S.Ct. at 2473–2474, 76 L.Ed.2d at 673–74; *Wright Line*, 662 F.2d at 903; *LeMars Education Association v. Public Employment Relations Board*, 381 N.W.2d 385 (table) slip op. at 3 (Iowa App.1985). *See Iowa State Fairgrounds Security v. Iowa Civil Rights Commission*, 322 N.W.2d 293, 296 (Iowa 1982).

Under the dual-motive test the employee must establish a *prima facie* case that the employee's protected conduct (i.e., union activity) was a "substantial or motivating factor in the discharge." *Transportation Management Corp.*, 462 U.S. at 400, 103 S.Ct. at 2473, 76 L.Ed.2d at 674. The burden then shifts to the employer to demonstrate by a preponderance of the evidence the discharge would have taken place even in the absence of the protected conduct. *Id.; Wright Line*, 662 F.2d at 905. The shifting burden requires the employer to make out what is actually an affirmative defense: the discharge would have occurred in any event *and was a lawful discharge for valid reasons. Transportation Management Corp.*, 462 U.S. at 398,

400, 103 S.Ct. at 2472, 2473, 76 L.E.2d at 673–74.

■ **A. Union's prima facie case.** The county contends there was not substantial evidence in the record when viewed as a whole to establish the union's prima facie case that Jones was discharged because of protected union activities. We disagree and find substantial evidence to support the agency's decision.

Jones was an active union employee at the facility and worked hard on enforcing the collective bargaining agreement, filing employee grievances and representing employees on other personal matters. Administrative consultant Charles Duling testified care facility administrators said the union and union steward Jones were the source of problems at the care facility. Duling testified in summer, 1982, Smyth discussed trying to decertify the union, interfering with the union internal elections to get Jones defeated and getting rid of Jones. In October, 1982, Smyth laid off Jones out of seniority. A grievance arbitrator found Jones' discharge was in violation of the union contract and ordered Jones reinstated.

After Jones was reinstated, the assistant administrator told Jones the county was still out to get Jones. Care facility supervisor Debra Hightshoe also testified Smyth was hostile toward Jones and the union. Hightshoe testified Smyth referred to "the damn union" and "that damn Denzie Jones" when discussing union-management problems.

Jones had no reprimands or warnings in his personnel file at the time he was discharged. Jones had been evaluated as "above average" shortly before his discharge. Smyth also admitted under cross-examination the only problems she had with Jones regarded interpretation of the collective bargaining agreement. In addition, Duling testified Jones stood out only because of his position as union steward and Smyth's problems with Jones were due to his activities on behalf of the union. We find there was substantial evidence in the record to support the hearing officer's and appeal board's decisions that the union had

established its prima facie case that anti-union animus had been a motivating factor in Smyth's decision to discharge Jones.

**B. County's defense.** The county contends that even if anti-union animus existed, there was substantial evidence that such animus did not contribute to Smyth's decision to discharge Jones and Smyth discharged Jones for valid reasons.

The county contends Jones committed several acts of insubordination prompting his discharge. The county asserts Jones' derogatory reference to Smyth as "big mama" *was* an act of insubordination because his fellow workers and superiors saw it as being derogatory and insubordinate.

The county cites *Sieg v. Civil Service Commission of the City of West Des Moines*, 342 N.W.2d 824 (Iowa 1983), as supporting its argument Jones' comment justified his discharge. The county contends *Sieg* is controlling in holding that employees may be discharged for insubordination which includes making derogatory and intimidating remarks about a superior.

In *Sieg*, the court found a police officer's "torrent of profane and sexual epithets" of the "most base and demeaning" kind spoken to the officer's immediate superior justified his discharge because it was behavior which "betrayed the high standards of conduct expected of police officers and the compassion and harmony necessary for effective law enforcement." *Sieg*, 342 N.W.2d at 830. The court found the officer's "deportment was so bellicose and offensive" that he was finally ordered out of police headquarters. *Id.* In sum, the court found the officer's actions and words showed a complete lack of self-discipline and control and indicated an unwillingness to follow instructions or respect authority. *Id.*

In the instant case there is no evidence in the record which suggests Jones' language rose to the level of seriousness of the officer's actions in *Sieg*. First, Jones' supposed act of insubordination was never documented in his personnel file nor was he reprimanded for it prior to his discharge even though the county viewed the comment as a serious act of insubordination

leading to disruption of the care facility. Second, the only derogatory and insubordinate utterance Jones made was to call Smyth "big mama," which he maintained was only a reference to the fact Smyth's son also worked at the care facility. There was no evidence Jones' single derogatory comment about Smyth indicated he lacked self-discipline or showed an inability to follow work instructions. Jones' good work performance evaluations showed his ability and success in working at the care facility.

The county also argues Jones was discharged for threatening behavior. The county cites a statement Jones made that Smyth would not be working at the care facility after July, 1984. Jones stated he hoped Smyth would no longer be working there. There is no indication he threatened Smyth's job or took any action toward that end. Once again this threat is not documented in Jones' personnel file nor was he reprimanded. Jones did relay a message from the union representative that the union would contact the attorney general's office to investigate the care facility if employee conditions did not improve. This communication occurred approximately one week prior to Jones' discharge. However, the county could not allege in its brief that this action constituted the threat to Smyth since it would be a violation for an employer to discharge an employee for filing a complaint or request for investigation with the appropriate agency. Iowa Code § 20.-10(2)(d).

The county further argues Jones threatened Flage's authority on more than one occasion. We agree with the hearing officer and appeal board that none of those incidents amounted to a threat and all involved protected union activity.

We affirm the district court's determination upholding the appeal board decision Jones was discharged for union activities in violation of Iowa Code § 20.10(2).

AFFIRMED.