Glen **FELLOWS**, Petitioner–Appellee,

v.

**IOWA CIVIL RIGHTS COMMISSION**,
Respondent–Appellant.

No. 87–1051.

Court of Appeals of Iowa.

May 31, 1988.

Thomas J. Miller, Atty. Gen., and Teresa Baustian, Asst. Atty. Gen., for respondent-appellant.

Richard Lowther, Ames, for petitioner-appellee.

Heard by OXBERGER, C.J., and DONIELSON and HAYDEN, JJ.

DONIELSON, Judge.

Respondent, Iowa Civil Rights Commission, appeals from the district court's order overturning the Civil Rights Commission's finding that petitioner, Glen Fellows, had discriminated on the basis of race in making rental property available. We affirm.

Vanessa Baker–Latimer, a black woman, was employed as the housing coordinator for the city of Ames. Her agency sometimes purchased existing apartment buildings to use for its own purposes, and her responsibilities included assisting the tenants of those buildings to relocate to comparable housing.

In March 1985, Baker–Latimer was assisting in the relocation of such a tenant, a white male. In search of an apartment for this tenant, she responded to a classified ad and made an appointment to meet property owner Glen Fellows.

Baker–Latimer and Fellows met in the parking lot of Fellows' building on the evening of March 29. Upon meeting Baker–Latimer and before learning that she was acting on behalf of another apartment seeker, Fellows allegedly tried to discourage Baker–Latimer from renting the apartment by telling her that there was a long waiting list and that she had little or no chance of getting the apartment. Fellows allegedly tried to refuse to show the apartment to Baker–Latimer. However, when Baker–Latimer insisted and made Fellows understand that she was acting for another person, Fellows grudgingly gave her a partial tour of the apartment. This tour was allegedly accompanied by further assurances that neither Baker–Latimer nor the person she represented had any chance of getting the apartment.

Following her interview with Fellows, Baker–Latimer discussed his conduct with a white coworker, Eden Schmitt. Schmitt offered to conduct a test to see if a white person would receive the same treatment from Fellows. On the morning of March 30, Schmitt contacted Fellows, posing as an apartment-seeker, and viewed the same apartment. Schmitt asserted that she was given a relaxed, friendly, and complete tour of the apartment; she also asserted that Fellows made no reference to a waiting list and that Fellows indicated the apartment could be quickly and readily available to Schmitt.

There was evidence that later on the same day, March 30, another white apart-

ment-seeker viewed the apartment, offered a deposit, and was immediately accepted as a tenant.

Baker–Latimer later filed a complaint against Fellows with the Iowa Civil Rights Commission, alleging that Fellows had discriminated against Baker–Latimer on the basis of race by lying about the availability of a rental unit and about the procedures for obtaining a rental unit. The Civil Rights Commission found that Fellows had discriminated, and the Commission awarded damages to Baker–Latimer.

Fellows challenged the Commission's administrative action by filing the present petition for judicial review. The district court overturned the Commission's action.

The district court first held that Baker–Latimer had failed to allege a violation of the two subsections of Iowa's civil rights statute which might have been most apposite factually, Iowa Code subsections 601A.8(3) and 601A.8(4). Subsection 3 provides that it is a discriminatory practice "to directly or indirectly advertise, or in any other manner indicate or publicize, that the ... rental ... of real property ... by persons of any particular race ... is unwelcome, objectionable, not acceptable, or not solicited." Subsection 4 prohibits discrimination based on the race of a tenant's likely guests or invitees.

Having held that no relief was available under subsections 3 and 4 because Baker–Latimer had failed to rely on those subsections in her complaint, the district court next held that the facts did not establish discrimination under the remaining two subsections of the statute, subsections 601A.8(1) and 601A.8(2). Those subsections provide, insofar as is relevant here, that it is a discriminatory practice to refuse to rent, or to discriminate in the terms, conditions, or privileges of rental, on the basis of race. The district court concluded there was no showing that Fellows had either refused to rent to Baker–Latimer or discriminated against her in the terms, conditions, or privileges of rental. The district court observed that Fellows had no chance to refuse to rent to Baker–Latimer because she did not try to rent the apartment or indicate in any way that she, rather than a third person, wanted to rent the apartment. The district court also commented that Fellows had no opportunity to discriminate in the terms, conditions, or privileges of rental because no terms, conditions, or privileges were ever discussed. The district court therefore concluded that there was no substantial evidence to support the Civil Rights Commission's conclusion that discrimination had occurred. The Civil Rights Commission has appealed from the district court's ruling.

Our scope of review is limited to the correction of errors at law. Iowa Code § 17A.20; *Cerro Gordo County v. Public Employ. Rel. Bd.*, 395 N.W.2d 672, 675 (Iowa App.1986). We review the decision of the district court by applying the standards of Iowa Code section 17A.19(8) to the agency action to determine whether our conclusions are the same as the district court. *Cerro Gordo County*, 395 N.W.2d at 675. In a contested case proceeding, we shall grant relief from an agency decision which is not supported by substantial evidence in the record made before the agency when that record is viewed as a whole. Iowa Code § 17A.19(8)(f). Evidence is substantial when a reasonable person would accept it as adequate to reach a given conclusion. *City of Davenport v. Public Employ. Rel. Bd.*, 264 N.W.2d 307, 311 (Iowa 1978).

I. The Civil Rights Commission argues that the district court erred in concluding that the agency action was "affected by other error of law," pursuant to Iowa Code section 17A.19(8)(e). The Civil Rights Commission contends the district court gave a strained and narrow construction to subsections 601A.8(1) and 601A.8(2).

Iowa Code sections 601A.8(1) and (2) provide it is a discriminatory practice for an owner:

1. To refuse to ... rent any real property or housing accommodation ... to any person because of the race, color ... of such person.

2. To discriminate against any person because of the person's race, color ... in the terms, conditions, or privileges of the

... rental ... of any real property or housing accommodation ... therein.

The major point of contention between the Civil Rights Commission and Fellows is interpretation of sections 601A.8(1) and (2). The Civil Rights Commission construed the section 601A.8(1) "refusal to rent" language to refer to "[b]urdensome procedures, delaying tactics, and misrepresentations on the availability of housing units...." The Commission further construed the language in section 601A.8(2) referring to "terms, conditions, or privileges of the rental" to encompass those discriminatory acts both before and after the rental transaction. The Commission interpreted the relevant Code sections to confer on all persons "a legal right to truthful information about available housing, whether they are a bona fide renter or not."

■ Chapter 601A is entitled to broad interpretation. Iowa Code § 601A.18. Courts are bound to give appropriate weight to the judgment of agencies charged with the special duty of administering a particular statute. *Good v. Iowa Civil Rights Commission*, 368 N.W.2d 151, 155 (Iowa 1985). However, the final construction of a statute is a matter of law for the court. *Id.* In *Sommers v. Iowa Civil Rights Commission*, 337 N.W.2d 470, 472–73 (Iowa 1983), our supreme court recited a number of well-established rules of statutory construction set out in part as follows:

(1) In considering legislative enactments we should avoid strained, impractical or absurd results.

(2) Ordinarily, the usual and ordinary meaning is to be given the language used but the manifest intent of the legislature will prevail over the literal import of the words used.

(3) Where language is clear and plain, there is no room for construction.

Fellows argues that sections 601A.8(1) and (2) are clear and plain, requiring no need for construction and that there is no basis to believe the manifest intent of the legislature was other than stated; i.e., that the discriminatory conduct condemned therein is the refusal to rent and the dis-

criminatory terms, privileges, or conditions in the rental. We agree.

■ Section 601A.8(1) clearly requires a "refusal to rent" and section 601A.8(2) clearly states there shall be no discrimination in the "terms, conditions, or privileges" in the rental. We agree with the district court's final interpretation of the statute and find that the actions alleged by Baker–Latimer do not fall within the meaning of the discriminatory practices set forth in the statutes charged. We base our decision on the following discussion.

Baker–Latimer testified she was acting as an employee for the City of Ames and not as a private person. She testified on cross-examination as follows:

Q. On the 29th day of March when you interviewed Mr. Fellows in his apartment, were you authorized by your client to make a lease of the property? A. No.

Q. Were you authorized to attempt to negotiate a lease? A. No.

Q. Were you authorized to make a down payment for your client? A. No.

Q. Were you authorized by your client to ask that the apartment be held for him? A. No.

Q. Did you ask Mr. Fellows to hold the property? A. No, I didn't.

\* \* \* \* \* \*

Q. All you wanted to do in the interview with Mr. Fellows was to examine the property and see whether it was acceptable, up to the standards that you could accept for clients? A. All I wanted to do was see the apartment, to see whether or not I felt the client might want to rent it.

Q. So all you wanted to do is see the property. You didn't want to rent it. You weren't in a position to make a down payment. You weren't in a position to make any commitment to hold the property for you, were you? A. No.

Q. All right. And you did see the apartment, didn't you? A. Finally.

Q. You saw it? A. Yes.

Baker–Latimer further testified Fellows told her "he wasn't going to go through a third party.... He said he wouldn't deal with third parties." Fellows was never asked if he would rent his apartment; hence, no terms, conditions, or privileges of rental were ever discussed. The record is clear that Fellows did not refuse to rent Baker–Latimer an apartment since he had no opportunity to do so.

Furthermore, even accepting the agency's statutory construction of sections 601A.8(1) and (2), we cannot find that Fellows committed any violations. Baker–Latimer wanted to see the apartment; Fellows showed it to her. Fellows testified, "[I]n our renting program we like to talk to the people who pays the rent and the deposit for the apartment, and we interview those." There is no evidence if Baker–Latimer's client would have been there with a deposit check that Fellows would not have rented the apartment.

In addition, we agree with the district court that sections 601A.8(3) and (4) contain broader language so that the overall effectiveness of the statute would not be impaired. Those sections state it is a discriminatory practice:

3. To directly or indirectly advertise, or in any other manner indicate or publicize that the ... rental, ... of any real property or housing accommodation ... by persons of any particular race, color, ... is unwelcome, objectionable, not acceptable or not solicited.

4. To discriminate against the lessee ... of any real property or housing accommodation ... or against any prospective lessee ... because of the race, color, ... of persons who may from time to time be present in or on the lessee's or owner's premises for lawful purposes at the invitation of the lessee or owner as friends, guests, visitors, relatives or in any similar capacity.

II. The Civil Rights Commission also contends the district court applied an improper standard of review and erroneously substituted its own findings of fact for those of the Commission. The Commission contends the district court erred in not finding the agency decision was supported by substantial evidence.

We agree with the district court's decision and, in support, rely on our discussion under section I of this opinion. Fellows told Baker–Latimer he did not rent through third persons. We do not find this explanation to be pretextual; there is no evidence to the contrary. Neither do we find a true comparison can be made between Baker–Latimer and Schmitt; Schmitt was not looking to seek housing for another person. Conceivably, Fellows was more accommodating to Schmitt because he believed her to be truly interested in renting the apartment. We do not have the benefit of Schmitt, a white person, approaching Fellows, requesting rental of the apartment on behalf of a third person, and being treated more amicably. Even if we did have such a comparison, that is not to say our decision would differ if Schmitt, too, made no attempt to rent the apartment but, rather, only inspected it.

■ III. Fellows asserts that, in addition to the agency action being unsupported by substantial evidence and affected by other error of law, the agency's decision was unreasonable, arbitrary, and clearly unwarranted, pursuant to Iowa Code section 17A.19(8)(g).

The hearing officer in this case initially found Fellows had violated sections 601A.8(3) and (4), rather than sections 601A.8(1) and (2), which were the alleged violations. The Commission confirmed the findings. Upon application for rehearing by Baker–Latimer to amend the decision to include sections 601A.8(1) and (2) as the correct sections and to modify its decision by inserting further statutory construction of those sections, the Civil Rights Commission complied with her request in a later order. In addition, the Commission doubled the hearing officer's award of $5,000 for emotional damage to $10,000 with interest, with no reason for doing so.

We have reviewed the record and agree it is not easy to give deference to the agency decision in light of the above-noted inconsistencies. With regard to the issue of emotional damage, Baker–Latimer stat-

ed her self-image was "dented." We do not find Baker–Latimer suffered any economic loss, nor does she complain of symptoms indicative of emotional distress such as headaches, nausea, loss of appetite, inability to sleep, tension, depression, or loss of time from work. We agree with Fellows that the agency's decision was unreasonable and arbitrary.

Accordingly, for all of the reasons previously discussed, we affirm the judgment of the district court.

AFFIRMED.