Vernon E. **EILERS,** Plaintiff–Appellee,

v.

**CIVIL SERVICE COMMISSION OF the CITY OF BURLINGTON, Iowa,** Defendant–Appellant.

No. 94–1357.

Court of Appeals of Iowa.

Dec. 22, 1995.

Patrick L. Woodward of Aspelmeier, Fisch, Power, Warner & Engberg, Burlington, for appellant.

Mary Ann Brown of Bauer, Schulte, Hahn & Swanson, Burlington, for appellee.

Heard by SACKETT, P.J., CADY, J., and McCARTNEY, S.J.*

CADY, Judge.

The Civil Service Commission of Burlington, Iowa appeals a district court's ruling reversing its decision to suspend a Burlington police officer for misconduct. The district court dismissed all charges against the officer and ordered the matter expunged from his personnel file. We reverse the district court.

Around midnight on July 27, 1993, Burlington Police Captain Vernon Eilers was at home with his seventeen-year old son, Jay. The doorbell rang and Jay answered the door. A teenage boy, whom Eilers did not know, was outside the door. Jay put on his shoes, and went outside. Eilers noticed Jay was angry and followed him outside. Another teenage boy, whom Eilers recognized as Mike Spiker, was in the front yard. A car with other teenagers inside was parked in the street. Jay and Spiker exchanged a few words and appeared to be getting ready to fight each other. Eilers stepped between and separated them. The boy who had rung the doorbell, Chuck Lemley, yelled to "Let them fight." Using profanity, Eilers ordered Lemley out of the yard. When Lemley did not obey, Eilers grabbed his arm and escorted him to the street. Eilers then returned to Jay and Spiker and said, "Do you want to fight?" Jay then punched Spiker and a fight ensued. Eilers shouted "Don't stop now" at one point during the fight. Lemley also came back into the yard during the fight. Eilers believed Lemley was going to join the fight so he swung his arm and struck Lem-

ley. Lemley tried to kick Eilers and the two went to the ground fighting. Jay and Spiker then stopped their fight and separated Lemley and Eilers. Spiker and Lemley left in the car.

The next afternoon Lemley and his mother reported the incident to the Burlington police, and filed a complaint against Eilers. Eilers did not work on July 27 but tried unsuccessfully to reach Police Chief Wendall Patton by phone to inform him of the incident. When Eilers returned to work on July 28 he tried to speak to Police Captain John, who told him he could not discuss the incident. On August 26, 1993, following an investigation and a meeting with Eilers, Chief Patton found Eilers had committed eight specifications of misconduct and suspended him without pay for ten days.

Eilers appealed Patton's decision to the Civil Service Commission. Following a hearing, the Commission found Eilers committed five specifications of misconduct. The Commission reduced Eilers' suspension without pay to five days.

Eilers appealed to the district court. The district court found Eilers had not committed misconduct and reversed the Commission's decision.

The Commission appeals. It argues Eilers' actions on July 27 and his failure to timely report the incident constituted misconduct and the contrary finding by the district court was not supported by the evidence. The Commission also argues the appropriate sanction for Eilers' misconduct was a five-day suspension from work without pay.

**I. Standard of Review**

Our review is de novo. *Sieg v. Civil Serv. Comm'n,* 342 N.W.2d 824, 826 (Iowa 1983). We give weight to the findings of the trial court, but are not bound by them. *Id.* We determine anew whether the evidence as a whole justified the disciplinary action imposed on the officer. *City of Des*

---

* Senior judge from the Second Judicial District serving on this court by order of the Iowa Su-

preme Court.

*Moines v. Civil Serv. Comm'n,* 513 N.W.2d 746, 748 (Iowa 1994).

## II. Analysis

■ The Commission found Eilers committed five acts of misconduct, including using profanity, insighting a breach of the peace, engaging in conduct unbecoming of a police officer, using physical force unrelated to self-defense, and failing to promptly notify an on-duty police officer of the incident. Eilers points out he violated no articulated standards or current policies, and committed no criminal offense. He also asserts other officers on the police force have been known to use profane language, the escalation of the violence was unpredictable and beyond his control and any departmental rules were either inapplicable or outdated. We find Eilers' arguments unpersuasive.

■ A police chief is authorized to "peremptorily suspend, demote or discharge a subordinate" for "misconduct." Iowa Code § 400.19 (1993). The term "misconduct" has no fixed meaning, but is broad enough to include relatively minor or innocuous behavior as well as flagrant and injurious breaches of decorum. *Sieg,* 342 N.W.2d at 829. The conduct, however, must be detrimental to the public interest. *City of Des Moines v. Civil Service Comm'n,* 513 N.W.2d at 748. The image projected by police officers to the public is vital to the police mission. *Millsap v. Cedar Rapids Civil Serv. Comm'n,* 249 N.W.2d 679, 686 (Iowa 1977). In turn, it also permeates other aspects of the criminal justice system, and impacts its overall success. Consequently, police officers must earn and maintain the public trust at all times by conducting themselves with good judgment and sound discretion. *See id.*

■ Grounds to justify discipline of an officer are not confined to the violation of a criminal statute or a departmental rule. They are also not confined to actions of a police officer while on duty, but include off-duty conduct. *Id.* Furthermore, disparate treatment may have some relevance in police disciplinary proceedings, but is not determinative when an officer's conduct poses a threat to the public safety. *Johnson v. Civil*

*Serv. Comm'n,* 352 N.W.2d 252, 255 (Iowa 1984). The fighting issue in this case is whether the conduct of Eilers demonstrated a sufficient lack of judgment and temperament to justify the imposition of sanctions. *See Sieg,* 342 N.W.2d at 829.

We acknowledge Eilers was thrust into the incident with little time to deliberate, and was involved as a parent as well as an off-duty officer. Nevertheless, his actions were not representative of the good judgment, restraint and compassion necessary for effective law enforcement. *See id.* Eilers encouraged physical violence between two teenagers and became physically violent toward another teenager. The circumstances did not justify his conduct and his use of force. *See Johnson,* 352 N.W.2d at 255 (misconduct involving the use of unnecessary force always implicates the public interest). His actions were the product of anger, detached from the principles of self-defense or defense of others. Police are community representatives, and Eilers' actions did not comport to the leadership required of a representative of law enforcement.

■ We agree with the Commission that the off-duty conduct of Eilers constituted "misconduct." We also agree a five-day suspension without pay was a proper sanction. We reverse the judgment of the district court.

**REVERSED.**