**Robert E. DOLAN, Appellee,**

v.

**CIVIL SERVICE COMMISSION OF the CITY OF DAVENPORT, Appellant.**

**No. 99–0466.**

Supreme Court of Iowa.

Oct. 10, 2001.

Mary J. Thee, City Attorney, Davenport, for appellant.

Dennis D. Jasper of Stafne, Lewis, Jasper, Bettendorf, for appellee.

CADY, Justice.

Robert Dolan was discharged from his position as a member of the city of Davenport's Fire Department for past and current misconduct. The district court reversed the decision by the Civil Service Commission to affirm the discharge, and ordered reinstatement. On our de novo review, we reverse the decision of the district court and reinstate the Civil Service Commission's termination decision.

## I. Background Facts and Proceedings.

Robert Dolan was a firefighter for the city of Davenport. He had worked for the city for fifteen years, and held the position of an engineer. He was responsible for driving the fire engine to the fire scene. Dolan was described as an "excellent" firefighter by several of his colleagues. Yet, despite his commendable on-the-job record, Dolan had a bleak disciplinary history.

Dolan had been suspended on four previous occasions. On April 21, 1986, he received a two-day suspension for an off-duty arrest for operating while intoxicated (OWI). From April 22, 1987 to October 1, 1987, he was suspended for failing to have a driver's license due to his habitual violator status. On April 22, 1996, Dolan received a one-day suspension for arriving late to work on three occasions within the last year. This conduct violated the de-

partment's tardiness policy. Dolan was again suspended for five days on November 18, 1996, following an arrest for harassment. This charge was based on inappropriate and threatening comments Dolan made to a pizza delivery woman. He was intoxicated at the time.

Dolan was discharged for conduct that occurred on April 11, 1997. While driving home on a snowy evening, Dolan lost control of his vehicle and slid into a ditch. A police officer witnessed the accident and saw Dolan flee the scene. Dolan claimed he walked from the scene to a friend's neighboring house to seek a ride home. Not long after Dolan arrived home, police officers came to his house to investigate the accident. Eventually, four officers arrived at the residence. Three of the police officers were from the LeClaire Police Department, while the other officer was a Scott County Deputy Sheriff. While questioning Dolan, the officers began to suspect he was intoxicated. After conducting field sobriety tests, one of the officers informed Dolan he was under arrest for OWI. Dolan then attempted to escape the custody of the police officers and refused to comply with the officers' orders. A struggle ensued, and two officers suffered minor injuries. Although he actively resisted arrest, Dolan was eventually handcuffed.

Dolan was charged with resisting arrest, interference with official acts, and OWI. Although the OWI and resisting arrest charges were subsequently dismissed, Dolan was adjudged guilty of interfering with official acts.

On April 15, 1997, prior to the disposition of the three criminal charges, the fire department chief informed Dolan he was discharged for misconduct in violation of Fire Department Rule 15.2. Rule 15.2 prescribed the general conduct expected of department members, and provided for punishment for conduct that disgraced the department. The fire chief's decision was based on the current incident of misconduct as well as on Dolan's extensive disciplinary history. In addition, the fire chief partially based the termination decision on the belief Dolan would likely lose his driver's license as a result of the OWI charge.

Following his discharge, Dolan voluntarily sought and successfully completed substance abuse treatment. Dolan's substance abuse counselor commended him for excelling in the outpatient treatment program and for recognizing the severity of his substance abuse problem in addition to controlling it.

On July 9, 1997, the Civil Service Commission upheld the fire chief's decision to terminate Dolan. Dolan appealed to the district court pursuant to Iowa Code section 400.27 (1997). An appeal was heard by the district court on January 29, 1999. It received evidence additional to that presented to the Commission. Three fellow firefighters testified to Dolan's superior competency as a firefighter. His substance abuse counselor testified Dolan had accepted responsibility for his prior actions, and he had been sober since completing the outpatient treatment program. Dolan acknowledged his sobriety and detailed his rehabilitation progress for the district court, which included his self-employment in the seamless gutter installation business.

The district court found Dolan's off-duty actions constituted misconduct in violation of Fire Department Rule 15.2, but held the misconduct was not sufficiently detrimental to the public interest to justify his termination. The court also found Dolan was a "recovering alcoholic [who] has finally recognized the underlying cause of his off-duty misconduct." Instead of termination, the court believed a several month suspension was the more appropriate sanc-

tion. However, the court construed section 400.27 to limit its review options to either affirm the Commission decision or reinstate Dolan. It determined it was not permitted to suspend Dolan. Consequently, the court reinstated Dolan as of the date of his discharge and awarded back pay compensation.

The Commission appeals. It argues the district court erroneously interpreted section 400.27 as limiting the district court's power of review, and urges us to find Dolan's misconduct warranted his discharge.

## II. Supreme Court Standard of Review.

▆▆▆ Our review of the decision by the district court is de novo. Iowa Code § 400.27; *Sieg v. Civil Serv. Comm'n,* 342 N.W.2d 824, 827 (Iowa 1983). Although we give weight to the findings of the district court, we are not bound by them. *See Sieg,* 342 N.W.2d at 828; 5 C.J.S. *Appeal and Error* § 761(c), at 202 (1993). We confine our review to the record made in the district court. *Johnson Mach. Works, Inc. v. Parkins,* 171 N.W.2d 139, 145 (Iowa 1969). Thus, we do not receive new evidence. *Id.;* 5 C.J.S. *Appeal and Error* § 761(b), at 201. Additionally, we limit our review to the same issues that were raised in the district court. *McKee v. McKee,* 239 Iowa 1093, 1098, 32 N.W.2d 379, 382 (1948); 5 C.J.S. *Appeal and Error* § 761(b), at 201.

## III. District Court Review.

▆▆▆ Iowa Code section 400.27 provides for a "trial de novo" in the district court from an appeal of a commission decision. Iowa Code § 400.27. "When statutory language expressly provides for a *trial* ... de novo, we believe this procedure must be distinguished from a *review* de novo." *Sieg,* 342 N.W.2d at 828 (emphasis

added). There are significant differences between the two proceedings. *See In re Huston,* 263 N.W.2d 697, 699 (Iowa 1978). Ordinarily, in a review proceeding, the reviewing court is restricted to the record made in the lower tribunal. *Sieg,* 342 N.W.2d at 828; *Mason v. World War II Serv. Compensation Bd.,* 243 Iowa 341, 344, 51 N.W.2d 432, 434 (1952). Conversely, in a trial de novo, the court hearing the case anew is permitted to receive evidence additional to that presented to the commission. *Wilson–Sinclair Co. v. Griggs,* 211 N.W.2d 133, 138–39 (Iowa 1973); *Mason,* 243 Iowa at 345, 51 N.W.2d at 434. Thus, a statute providing for a "trial de novo" in the district court contemplates a *trial* in the general meaning of the term, not merely a *review* of the agency proceeding. *Mason,* 243 Iowa at 345, 51 N.W.2d at 435; *see Dunham v. Clayton,* 470 N.W.2d 362, 367 (Iowa Ct.App.1991).

▆▆▆ A trial de novo would also normally permit the district court to select the same remedies that were available before the commission. In the case of firefighters, the chief of the fire department may suspend, demote, or discharge a firefighter for misconduct. Iowa Code § 400.18, .19. On appeal, the commission may then "affirm, modify, or reverse any case on its merits." *Id.* § 400.27. Thus, the commission has the same disciplinary options as the chief. On further appeal to the district court the trial de novo takes place. *Id.* This would normally mean the district court would have the same disciplinary options as the chief and the commission. The district court in this case determined, however, that its review options were limited to affirming or reversing the decision made by the Commission to discharge Dolan. It concluded it had no authority to modify the Commission decision. The district court relied on that portion of section 400.27 which provides as follows:

In the event the ruling or decision appealed from is reversed by the district court, the appellant, if it be an employee, *shall then be reinstated as of the date of the said suspension, demotion, or discharge and shall be entitled to compensation* from the date of such suspension, demotion, or discharge.

*Id.* (emphasis added).

We conclude this sentence does not limit the scope of a district court's review under section 400.27. Instead, we find this sentence only pertains to the issues of when a reinstatement should take effect and back pay compensation.

 In interpreting section 400.27, we must keep in mind the broad scope of the power granted to the district court in an appeal from a commission disciplinary decision. When the legislature provided for a trial de novo, it did not intend to limit the review to the record before the commission. *See Mason,* 243 Iowa at 345, 51 N.W.2d at 434; *Dunham,* 470 N.W.2d at 367. Instead, the objective of a trial de novo is to permit the district court to independently determine whether the sanction imposed by the commission was warranted. We would contravene the purpose of a trial de novo if we found section 400.27 prohibited district courts from modifying a commission decision. Moreover, the language of the disputed portion of the statute clearly applies only if the district court reverses the decision of the commission. It does not apply to limit the disciplinary options of the district court. Thus, the district court erroneously construed section 400.27 to limit its power of review. Accordingly, we are also entitled to modify the Commission's decision on our de novo review if we conclude suspension was the more appropriate sanction in this case.

## IV. Appropriate Discipline.

Iowa Code section 400.19 provides the fire department chief may discharge an employee for misconduct. Iowa Code § 400.19. In delegating the power of imposing sanctions to the fire chief, the legislature failed to define what type of misconduct warranted discharge. *Johnson v. Civil Serv. Comm'n,* 352 N.W.2d 252, 258 (Iowa 1984); *Sieg,* 342 N.W.2d at 829. Although the parameters are unclear, we may look to the Davenport Fire Department's own rules and prescribed code of conduct as well as existing precedent for guidance.

 Members of the Davenport Fire Department were on notice that their conduct was governed by Fire Department Rule 15.2. Moreover, as Dolan had been disciplined three previous times for misconduct, he was sufficiently apprised of what actions constituted a violation of Department policy. Rule 15.2 mandates that:

Section 2: General Conduct. In matters of general conduct, not within the scope of Department rules, members will be governed by *ordinary rules of good behavior observed by law abiding citizens, and will be punished for conduct tending to bring reproach, disgrace, or reflection upon the Department* and its uniform.

(Emphasis added.) Clearly, Dolan's conduct violated the "ordinary rules of good behavior observed by law abiding citizens." He was found guilty of violating the law prohibiting interference with official acts. Furthermore, the struggle with the police officers on the evening of April 11, 1997, disgraced, and reflected poorly upon Dolan, and by extension, the Davenport Fire Department. Dolan's conduct on April 11, even though it occurred while off-duty, constituted misconduct as prohibited by Fire Department Rule 15.2 and Iowa Code section 400.19. *See Appeal of Zeber,* 398

Pa. 35, 156 A.2d 821, 825 (1959) ("conduct which has a tendency to destroy public respect for municipal employees and confidence in the operation of municipal services" is unbecoming conduct).

The only remaining issue for us to resolve is the appropriate sanction under these circumstances. In making this independent determination, we consider Dolan's prior punished acts of misconduct as well as this current incident. *See City of Clinton v. Loeffelholz,* 448 N.W.2d 308, 312 (Iowa 1989); *City of Fort Dodge v. Civil Serv. Comm'n,* 562 N.W.2d 438, 440 (Iowa Ct.App.1997); *McCormack v. Civil Serv. Comm'n,* 315 N.W.2d 855, 859 (Iowa Ct.App.1981). Additionally, we balance the evidence, if any, of extenuating circumstances mitigating the misconduct. *See Johnson,* 352 N.W.2d at 258.

In determining whether dismissal was warranted in this case, we must remember the primary objective of section 400.19 is to protect the public interest. *See Johnson,* 352 N.W.2d at 258; *Sieg,* 342 N.W.2d at 829; *Millsap v. Cedar Rapids Civil Serv. Comm'n,* 249 N.W.2d 679, 684 (Iowa 1977). Firefighters have a duty to maintain the public trust and confidence, and they run afoul of this duty when they exercise a lack of judgment and discretion. *See Sieg,* 342 N.W.2d at 829; *Millsap,* 249 N.W.2d at 686–87; *City of Fort Dodge,* 562 N.W.2d at 440; *Eilers v. Civil Serv. Comm'n,* 544 N.W.2d 463, 466 (Iowa Ct. App.1995). This heightened duty extends to a firefighter's off-duty conduct. *See Sieg,* 342 N.W.2d at 829; *Eilers,* 544 N.W.2d at 466; *Fabio v. Civil Serv. Comm'n,* 30 Pa.Cmwlth. 203, 373 A.2d 751, 754 (1977). Thus, the determinative factor is whether Dolan's conduct was sufficiently detrimental to the public interest. *Sieg,* 342 N.W.2d at 828; *City of Fort Dodge,* 562 N.W.2d at 440. If so, discharge was

warranted. *City of Fort Dodge,* 562 N.W.2d at 440.

Clearly, Dolan's actions on the evening of April 11 demonstrated a lack of respect for authority. *Sieg,* 342 N.W.2d at 829; *City of Fort Dodge,* 562 N.W.2d at 441. This incident, in addition to the other prior acts of misconduct, revealed Dolan's volatile personality and inability to exercise personal restraint. *City of Clinton,* 448 N.W.2d at 312. Moreover, Dolan's past and current misconduct exhibited a persistent pattern of disregard for departmental rules. *Sieg,* 342 N.W.2d at 830. Even though the current act of insubordination occurred within the confines of his personal residence, these characteristics persistently displayed by Dolan could likely expand to and affect the public he was charged to protect. *Id.* at 829; *see Fabio,* 373 A.2d at 755 ("a distinction between 'private' and 'public' . . . conduct has [no] bearing"). Furthermore, Dolan's conduct reflected poorly on his ability to fulfill his role as a firefighter. It was viewed by members of the police department as well as a deputy sheriff. *Sieg,* 342 N.W.2d at 829. Perhaps equally, if not more, important, Dolan's conduct became a matter of public knowledge. *See Fabio,* 373 A.2d at 755. Local newspapers apprised the public of these proceedings. Thus, Dolan's misconduct likely damaged the Davenport Fire Department's prestige and breached the public's trust in his leadership abilities. *See Core v. City of Traverse City,* 89 Mich. App. 492, 280 N.W.2d 569, 571 (1979).

We conclude Dolan's consistent disrespect of authority and the public, as well as his failure to exercise good judgment and self-control, was sufficiently detrimental to the public interest to warrant his termination. *Eilers,* 544 N.W.2d at 466; *Fabio,* 373 A.2d at 755. Four of the five disciplinary actions stemmed from Dolan's substance abuse problems. In

addition, the circumstances surrounding the harassment charge were particularly troubling. Dolan told a woman delivering pizza to his home he should rape her. Dolan's substance abuse problems have resulted in his arrest for OWI on three separate occasions. The fact that each incident of misconduct occurred while Dolan was off-duty does not diminish their seriousness. Moreover, we do not find the evidence introduced by Dolan to the district court of a supposed vendetta against him by certain members of the police department constituted an extenuating circumstance. *See Johnson,* 352 N.W.2d at 258. Likewise, none of the circumstances from the current incident revealed a justification for Dolan's misconduct. *Eilers,* 544 N.W.2d at 466.

■ Nevertheless, Dolan contends the evidence of his rehabilitation as an alcoholic presented at the district court hearing mitigates the cumulative effect of his past and current misconduct. As the district court found, Dolan asserts this evidence strongly militates against discharge.

■ We begin our analysis of the impact of the evidence of Dolan's rehabilitation by acknowledging a trial de novo before the district court permits new or additional evidence not presented to the commission to be presented to the district court. Clearly, the passage of time between the two hearings can shed more light on the case, especially where the time spans eighteen months as, it did in this case. *See Wilson–Sinclair Co.,* 211 N.W.2d at 138–39; *Mason,* 243 Iowa at 345, 51 N.W.2d at 434. However, a trial de novo does not change the issues in the case or the nature of the evidence to support those issues. *See McKee,* 239 Iowa at 1098, 32 N.W.2d at 382. The issues before the Commission were whether Dolan committed misconduct, and, if so, what discipline should result

from the misconduct. These were the same issues before the district court.

■ We have previously found evidence discovered subsequent to a chief's decision sufficient to mitigate the alleged misconduct. *See City of Des Moines v. Civil Serv. Comm'n,* 513 N.W.2d 746, 747–49 (Iowa 1994); *see also Clay v. City of Cedar Rapids,* 577 N.W.2d 862, 865–66 (Iowa Ct.App.1998). However, in those cases, the evidence indicated the officer's actions did not constitute misconduct and it related to facts that were in existence at the time the original discipline was imposed. *See City of Des Moines,* 513 N.W.2d at 749; *Clay,* 577 N.W.2d at 866. In this case, the evidence offered by Dolan to show he no longer consumes alcohol does not impact the issue of misconduct. The abuse of alcohol is not an excuse for misconduct. *Thibodeaux v. City of Opelousas,* 717 So.2d 254, 259 (La.Ct.App. 1998). Furthermore, the evidence of rehabilitation was beyond the temporal parameters of the circumstances of the termination.

■ Ordinarily, evidence of rehabilitation from alcohol abuse following a termination decision would not be relevant in a subsequent de novo proceeding. Primarily, a de novo proceeding considers facts and circumstances leading to the original termination. The review process under chapter 400 exists to protect and shield public employees from arbitrary and capricious removal. *City of Des Moines v. Civil Serv. Comm'n,* 540 N.W.2d 52, 58–59 (Iowa 1995). It does not exist to change the issues or scope of the original termination decision. This is not to say evidence of rehabilitation could never be relevant, but the evidence of rehabilitation presented to the district court in this case was simply too far removed from the origi-

nal termination decision to have any impact on the disciplinary decision.

In our review of the relevant evidence surrounding the termination decision, it is clear that Dolan's commendable on-the-job performance was circumvented by his problematic disciplinary history. *See City of Clinton,* 448 N.W.2d at 312 (although officer "established an exemplary record" for the first six years of employment, he "repeatedly exhibited behavior that indicated a lack of sound judgment" over the next two years); *City of Fort Dodge,* 562 N.W.2d at 441 ("repeated misconduct following severe and costly suspensions reveal a dimension of insolence that is not amenable to correction"); *McCormack,* 315 N.W.2d at 859 (officer "guilty of a series of incidents showing extremely poor judgment, reflecting badly upon the police department"); *see also Appeal of Zeber,* 156 A.2d at 824–25 (although fireman served for seventeen years without incident, "the complained of conduct and its attending circumstances ... offend[ed] publicly accepted standards of decency"). This history was extensive, and revealed a long and serious track record of alcohol abuse.

Other jurisdictions have found conduct similar to, and sometimes less egregious than, the conduct of Dolan in this case to warrant termination. *See Thibodeaux,* 717 So.2d at 260 (off-duty conduct of driving while intoxicated and surrounding circumstances warranted officer's termination). *But see Aiello v. City of Wilmington,* 623 F.2d 845, 847–48 (3d Cir.1980) (fireman suffering from severe emotional distress suspended for 2000 hours after found by police passed out on floor of retail store he had entered illegally). In *Civil Service Commission v. Wojtusik,* 106 Pa.Cmwlth. 214, 525 A.2d 1255 (1987), the court upheld the Civil Service Commission's decision to terminate an officer who was charged with OWI, assault on police, resisting arrest,

and disorderly conduct. *Wojtusik,* 525 A.2d at 1256. Although the officer was subsequently acquitted of all charges, the court found the officer's conduct in kicking the arresting officers after he had been handcuffed was conduct unbecoming of an officer. *Id.* at 1257–58. Likewise, in *Core v. City of Traverse City,* 89 Mich.App. 492, 280 N.W.2d 569 (1979), the court upheld the fire chief's decision to terminate the firefighter for his arrest for illegally hunting deer with an artificial light, even though he was also subsequently acquitted of the charge. *Core,* 280 N.W.2d at 571. However, the *Core* court also found significant the firefighter's disciplinary history, which involved reckless driving and assault convictions. *Id.* at 570. Thus, we are not alone in our finding that a repeated course of misconduct, viewed in connection with a present charge, warrants discharge. *See Williams v. Police Dep't of New York,* 50 N.Y.2d 956, 431 N.Y.S.2d 462, 463, 409 N.E.2d 936 (1980) (at time of current incident, officer was on disciplinary probation for the fourth time); *Smith v. Tomlinson,* 136 A.D.2d 646, 523 N.Y.S.2d 604, 606 (N.Y.App.Div.1988) ("present misconduct charge was the third such incident").

Firefighters are the protectors of our community. *Eilers,* 544 N.W.2d at 466. They enter our homes and places of business under the most dire of circumstances. *Core,* 280 N.W.2d at 572. Consequently, public trust is essential for the fire department to operate efficiently. *Id.* In order to maintain the public trust, firefighters must adhere to the highest standard of respect for others. *Aiello,* 623 F.2d at 848. Not only must firefighters maintain the trust of the public to whom they are charged to serve, they must also have the respect of their colleagues who are called to place their very lives in each other's hands. *Thibodeaux,* 717 So.2d at 260. Detrimental conduct by a fire department member adversely affects the overall mo-

rale and efficiency of the department. *Appeal of Zeber*, 156 A.2d at 825. Dolan's conduct tainted the trust of both the public and his fellow firefighters. On numerous occasions, he exhibited a lack of respect for others and a willingness to break the law. *See Appeal of Zeber*, 156 A.2d at 825. Although Dolan's alcohol abuse did not directly interfere with his competency as a firefighter, it did create problems within the department in the form of administrative proceedings, suspension from the line of duty, and a breach of trust. *See id.* Dolan's discharge was warranted.

## V. Conclusion.

We conclude section 400.27 does not intrude upon a district court's broad power in conducting a trial de novo to modify a disciplinary decision of the commission. In addition, we find Dolan's misconduct was sufficiently detrimental to the public interest to warrant his discharge.

**REVERSED.**