# IN THE COURT OF APPEALS OF IOWA

No. 16-1042
Filed April 19, 2017

**CITY OF DES MOINES, IOWA,**
        Plaintiff-Appellee,

**vs.**

**TRAVIS HURLEY,**
        Defendant-Appellant.
_____

Appeal from the Iowa District Court for Polk County, Douglas F. Staskal, Judge.

A former employee appeals the district court's order upholding his termination. **AFFIRMED.**

Charles E. Gribble and Heidi M. Young of Parrish Kruidenier Dunn Boles Gribble Gentry Brown & Bergmann, L.L.P., Des Moines, for appellant.

Carol J. Moser, Deputy City Attorney, and Douglas P. Philiph, Assistant City Attorney, for appellee.

Heard by Vogel, P.J., and Doyle and McDonald, JJ.

**VOGEL, Presiding Judge.**

Travis Hurley claims the district court erred in reversing the decision of the Des Moines Civil Service Commission (the Commission) and upholding the City of Des Moines Fire Department's (the Department) decision to terminate his employment. Specifically, Hurley claims the district court improperly shifted the burden of proof onto him and failed to consider relevant mitigating factors regarding the termination decision. The City of Des Moines (the City) asserts the decision to terminate Hurley was appropriate. Because we conclude termination was an appropriate sanction for Hurley's misconduct, we affirm.

### I.     Background Facts and Proceedings

The Department hired Hurley as a firefighter in 2002. In February 2003, while still completing his probationary period of employment, Hurley was convicted of operating a motor vehicle while intoxicated (OWI). After being notified of Hurley's conviction, the fire chief at the time—Phillip Vorlander—sent Hurley a letter warning "any further incidents related to your operating a motor vehicle while under the influence of alcohol will result in termination of your employment with the City of Des Moines and, in fact, any breach of the conduct expected of a member of our department jeopardizes your employment." The letter also suggested Hurley consider participating in the employee assistance program if he felt he needed services. As a result of his conviction, Hurley's driver's license was suspended for ninety days. Because the Department's policy required firefighters to maintain a driver's license as a condition of employment, Hurley was placed on unpaid leave until his license was restored.

Following restoration of his driver's license, Hurley returned to duty as a firefighter.

In April 2009, John TeKippe succeeded Vorlander as fire chief. In September 2009, TeKippe promulgated a revised Department Rule 29, which dealt with the licensing requirements Department personnel were required to maintain as part of their employment. The memo announcing the revision stated:

> Historically, this rule re-stated driver's license requirements, but was mainly the mechanism by which the DMFD [Des Moines Fire Department] initiated review and discipline of events surrounding driving while intoxicated charges (180 day language). While appropriate, administration within this area failed to fully encompass the significance of driver's license and EMT certification maintenance, their requirements in the work place, or the significance of the impact of on-or-off duty conduct, including alcohol or drug usage, either as a DMFD employee or civil servant.
>
> Specific to this rule, chronic, habitual, or significant use of drugs or alcohol, or criminal acts, can lead to loss of unrestricted driver's licenses and/or EMT certifications. Loss of these licenses or certifications can lead to loss of employment and/or an employee's right to be at work for the DMFD for the given period of restriction. While assessed individually, **employees who lose their unrestricted licenses or EMT certifications should not assume the department will accommodate their inability to be at, or perform, work.** In addition to this rule, chronic, habitual, or significant use of drugs or alcohol, or criminal acts, can lead to loss of civil service status, and therefore, employment.
>
> A review of our past outcomes in this area indicates that the department needs a consistent approach and response to changes in license and certification status, as well as a renewed ownership of our roles as responders, bread winners, and persons held to a higher standard in our community. Thirty-nine events were reviewed that could directly impact these requirements by the DOT [Department of Transportation], Iowa Bureau of EMS, the DMFD Medical Director, and the Fire Chief, and included multiple occurrences of domestic violence, OWI, possession of controlled substances, public intoxication, intoxication while on duty, solicitation, and others. To say the least, the department response has not been consistent, and thus, many have taken a less-than-concerned approach to these issues.
>
> No member of the DMFD should have to be reminded, by this memo, of the significance of the requirements of their position

> or that loss of licenses or certifications directly jeopardizes their employment. However, this memo serves as that reminder.
>
> Should an employee find themselves in need of assistance regarding drug or alcohol usage, or other assistance, the department will do all in its power to provide help, whether via the Employee Assistance Program, peer assistance, Chaplain services, or other appropriate means. However, the time for help is always "now" and not a means to mitigate loss of required licenses or certifications, which are a separate matter.

Hurley signed a copy of revised Rule 29.

On May 18, 2014, Hurley was arrested for operating a motor vehicle while intoxicated and taken to jail. Hurley was scheduled to work at 7 a.m. that morning but called the acting shift commander from the jail at 4:30 a.m. and notified him that Hurley would be using sick leave. At that time, Hurley did not divulge any information related to his arrest. On May 19, 2014, Hurley met TeKippe in his office and told him about his arrest.

On May 27, 2014, Hurley appeared before three members of the Department—an assistant chief, a district chief, and a human resources manager—for a predetermination hearing regarding potential violations of Department rules relating to his arrest and charges. On May 29, the DOT suspended Hurley's driver's license for one year.[1] On June 11, 2014, TeKippe sent Hurley a letter informing him of his termination:

> Your first notification of this event to a Chief Officer was on Monday, May 19, 2014, and not when you requested to be placed on sick leave the morning of May 18, 2014, from jail. On May 27, 2014, prior to the processing of any appeals, the Iowa DOT website listed your driver's license as revoked from May 29, 2014 to May 28, 2015.
> Your conduct, as described in the police report, and affirmed by you, is egregious. Your judgment, decisions, and actions placed

---

[1] Hurley's license was not formally revoked until October as he appealed the DOT's decision.

you, and citizens, in danger. Additionally, you chose to call in on sick leave from jail to conceal your actions.

With your second chance, repeated acknowledgement of your expectations, training and support provided, you again chose to not govern yourself accordingly. You have failed to live up to the trusts and responsibilities of a city of Des Moines employee and member of the Fire Department, whether they are measured against the expectations articulated by the Fire Chief, department rules and regulations, or conduct generally.

Hurley appealed TeKippe's decision to the Commission. On June 26, the Department filed a specification of charges, which generally repeated TeKippe's explanations in the letter for the termination decision. On January 22, 2015, Hurley pled guilty to operating while intoxicated first offense, in violation of Iowa Code section 321.J2 (2014). The Commission reversed TeKippe's termination decision: "Upon deliberation, the Commission believed that there was misconduct, but that the City's decision to terminate was too severe of a sanction for that misconduct. The majority of the Commission who heard the hearing voted to impose a suspension rather than termination."

The City appealed the Commission's decision to district court. On June 9, 2016, the district court reversed the Commission's decision and affirmed the Department's decision to terminate Hurley:

In conclusion, fire chief TeKippe made what was no doubt a very difficult decision. However, the decision was not arbitrary. Rather, it was reasoned. The combination of Hurley's: loss of driving privileges for one year as the result of an OWI; misuse of sick leave; and conduct of driving while drunk, reflecting adversely on the department, warranted discharge.

Hurley appeals.

## II.      Standard of Review

We review the district court's decision de novo.  *Dolan v. Civil Serv. Comm'n*, 634 N.W.2d 657, 662 (Iowa 2010).  We give weight to the findings of the district court, but we are not bound by them.  *Id.*  We make our own independent findings as to whether the discipline imposed was appropriate.  *Id.*

## III.     Hurley's Termination

Hurley challenges the district court's decision upholding his termination, claiming the district court improperly placed the burden on him to show the termination decision was arbitrary and failed to consider his entire work record, prior acts of misconduct, existing precedent, and lack of a standard policy in determining the decision was appropriate.  Ultimately, Hurley argues the decision to terminate him was not appropriate and that he is entitled to reinstatement with back pay and benefits.

When a district court hears an appeal from a decision of a civil service commission, the appeal is "a trial de novo as an equitable action."  Iowa Code § 400.27 (2015)[2]; *Dolan*, 634 N.W.2d at 662.  In a trial de novo, the district court is not simply reviewing the decision of the lower body; rather, "a statute providing for a 'trial de novo' in the district court contemplates a *trial* in the general meaning of the term."  *Dolan*, 634 N.W.2d at 662.  Thus, the district court may receive new evidence and choose from the full range of remedies available to the initial decision-maker.  *Id.*  Upon our review on appeal, we independently examine the

---

[2] Shortly after this case was filed, the legislature amended chapter 400.  *See* 2017 Iowa Legis. Serv. H.F. 291.

factual record and determine whether the discipline was appropriate.[3] *City of Des Moines v. Civil Serv. Comm'n*, 513 N.W.2d 746, 748 (Iowa 1994).

Iowa Code section 400.19 provides the "chief of the fire department, may peremptorily suspend, demote, or discharge a subordinate then under the . . . chief's direction for neglect of duty, disobedience of orders, misconduct, or failure to properly perform the subordinate's duties." As the code does not elaborate further on reasons for termination, we are permitted to look to the rules and regulations of the Department as well as existing precedent for guidance. *See Dolan*, 634 N.W.2d at 663 ("Although the parameters are unclear, we may look to the Davenport Fire Department's own rules and prescribed code of conduct as well as existing precedent for guidance.").

Three of the Department's rules seem to apply to Hurley's conduct. Rule 3 of the Department's rules states: "Members of the Department shall be held accountable for their conduct, which must be above reproach at all times, whether on duty, off duty, or on leave." Rule 29, as quoted above, requires members of the Department to maintain a valid Iowa driver's license. Rule 20 provides: "Sick leave is a benefit intended to provide income replacement for periods when an employee is unable to work due to illness or injury or the serious illness or injury of a member of his or her immediate family." Hurley does not dispute he committed the crime of operating while intoxicated, lost his driving privileges for one year as a result of his guilty plea, and used his sick leave when

---

[3] We agree with Hurley the district court erred by narrowing its review only to the question whether the decision to terminate Hurley was arbitrary, rather than a trial de novo with the district court making an independent judgment regarding the appropriate discipline. As we also are required to engage in an independent examination of the record and determine the proper sanction, we continue to the merits.

he was not ill or injured but rather was in jail following his arrest. Hurley also acknowledges that he was aware of the Department's rules governing his conduct. Based on our review of the factual record, we agree with the district court's conclusion that Hurley's actions constituted misconduct for the purposes of section 400.19. *See Dolan*, 634 N.W.2d at 663–64 (finding a firefighter's violation of the law and departmental rules constituted misconduct under section 400.19).

We now turn to the question whether termination was an appropriate sanction in response to Hurley's misconduct. *See id.* at 664. In doing so, we consider Hurley's prior history of misconduct along with the most recent acts of misconduct. *Id.* Additionally, we balance the evidence in the record, including any mitigating circumstances. *Id.*

Iowa Code section 400.18(1) provides: "A person holding civil service rights as provided in this chapter shall not be removed, demoted, or suspended arbitrarily, except as otherwise provided in this chapter . . . ." Our supreme court has noted: "The review process under chapter 400 exists to protect and shield public employees from arbitrary and capricious removal." *Dolan*, 634 N.W.2d at 665. Additionally, in determining whether termination of a firefighter was appropriate, our supreme court has emphasized that the primary objective of the fire chief's disciplinary power under section 400.19 "is to protect the public interest." *Id.* at 664 ("Firefighters have a duty to maintain the public trust and confidence, and they run afoul of this duty when they exercise a lack of judgment and discretion.").

It is in the public's interest that firefighters refrain from operating vehicles while intoxicated and maintain valid driver's licenses. By driving while intoxicated, Hurley demonstrated poor judgment, a lack of restraint, and a disregard for public safety. *See id.* at 665. In the context of his occupation as a firefighter, these traits are particularly troubling as Hurley is responsible for operating a vehicle and protecting public safety during the course of his normal duties. *See id.* ("Furthermore, Dolan's conduct reflected poorly on his ability to fulfill his role as a firefighter."). We also find it relevant that Hurley was arrested around 2 a.m. with a blood alcohol level of .147 percent when he was scheduled to report for duty at 7 a.m. Further, although Hurley's previous OWI was several years prior, it is significant that this incident was a repeated incident of misconduct after Hurley was explicitly warned after his first OWI that further incidents would jeopardize his employment. Hurley's conduct was exacerbated by the fact that it caused him to lose his driver's license, placing him in violation of a reasonable Departmental rule. Finally, as a result of his arrest, Hurley was unable to be at work the next day and chose to use sick leave, contrary to Department policy, rather than immediately disclose to his superiors that he had been arrested for an OWI.[4]

Hurley argues that the Department has not consistently applied a policy that the type of misconduct he engaged in would result in termination. In addressing the revision of the Department's Rule 29 in light of prior disciplinary actions, TeKippe said:

---

[4] We do believe it weighs in Hurley's favor that he did not engage in a prolonged cover-up of his conduct and disclosed it to TeKippe the following day.

Q. Just because you had two people arrested for OWI, why did that accelerate your review of the rule? A. Because we had a period of several years, about six or seven years or roughly the time that I was a union president where we had a lot of alcohol-related and OWI-related activity that did not meet with a consistent outcome regarding discipline or assistance to people. Two events——two new events so new in my time as the fire chief was just really important for me to get a handle on this because of how important these are to our work and our image.

Q. Talk a little bit about that. Why is the prevention of alcohol-related arrests important to the Des Moines Fire Department's image? A. Well, these kind of things, one, directly threaten our ability to have the licenses and the certifications we need to get work in the first place. But as a fire service person and a member of the Des Moines Fire Department, we are held to a higher standard. A lot of our work relies on people's ability to trust us, our credibility, and when it comes to OWIs, our firefighters go out and talk to high school kids about the dangers of drinking and driving and all of the bad things that can happen. It destroys our credibility to have those same people out drinking and driving, getting arrested for OWI, and having their picture or name on the internet and having that story told. It reflects terribly on us and it just—our mission is to respond and save people, not to place people in danger.

TeKippe's revision of Rule 29 and enforcement of it against Hurley was a response to the very inconsistency Hurley now cites as evidence to support his contention that he should not have been terminated. After the adoption of the rule, there is no evidence that a firefighter returned to active duty after committing a second OWI. TeKippe's explanation of the revision of the rule strikes us as a reasonable reaction to misconduct that threatened the image of the Department and the public interest. Thus, we are not influenced by the inconsistent discipline applied to the type of conduct Hurley engaged in prior to revision of Rule 29.

Hurley also urges that his good work history and pursuit of substance-abuse and mental-health treatment immediately following his arrest are mitigating factors weighing against termination being an appropriate sanction for his

misconduct. While we agree these factors reflect well on Hurley, we cannot conclude that they outweigh the seriousness of Hurley's misconduct. *See id.* (finding evidence the employee no longer consumed alcohol had no impact on the issue of misconduct). Hurley's conduct violated multiple Departmental rules and, as TeKippe explained, posed a unique threat to the public trust that is essential for the Department to be successful. *See id.* at 666 ("[P]ublic trust is essential for the fire department to operate efficiently."). Upon our independent review of the factual record, we conclude Hurley's termination was appropriate.

## IV. Conclusion

Because we conclude termination was an appropriate sanction for Hurley's misconduct, we affirm the district court's order upholding his termination.

**AFFIRMED.**