# IN THE COURT OF APPEALS OF IOWA

No. 21-0410
Filed June 15, 2022

**AUSTIN MENSEN,**
        Plaintiff-Appellant,

**vs.**

**CEDAR RAPIDS CIVIL SERVICE COMMISSION,**
        Defendant-Appellee.
_____


        Appeal from the Iowa District Court for Linn County, Fae Hoover Grinde,

Judge.


        Austin Mensen appeals the termination of his employment with the Cedar

Rapids Police Department.  **AFFIRMED.**


        Skylar J. Limkemann of Smith Mills Schrock Blades, P.C., Cedar Rapids,

for appellant.

        Elizabeth D. Jacobi of the City of Cedar Rapids City Attorney's Office, Cedar

Rapids, for appellee.


        Heard by Bower, C.J., and Schumacher and Ahlers, JJ.

**SCHUMACHER, Judge.**

Following a conviction for operating while intoxicated (OWI), second offense, Austin Mensen appeals his termination from the Cedar Rapids Police Department (the Department), which was upheld by the Cedar Rapids Civil Service Commission (the Commission). He claims the Commission failed to provide sufficient written findings of fact and conclusions of law supporting its decision. He also alleges his termination was arbitrary. Given the absence of a requirement for a municipal civil service commission to provide its findings of fact with any level of specificity, we decline Mensen's invitation to reverse on this ground. Additionally, Mensen did not preserve his claim that termination was arbitrary; but even if he had, his termination was not arbitrary. Accordingly, we affirm.

## I.      Background Facts & Proceedings

Mensen, a military veteran, was hired by the Cedar Rapids Police Department in July 2016. He began work for the Department after graduating from the police academy in November of the same year. The Department hired Mensen with the knowledge that Mensen had been convicted in 2010 of OWI, first offense. Mensen generally had positive performance reviews and a clean disciplinary record during his approximately three years of employment with the Department.

On May 27, 2019, Mensen was drinking with friends in downtown Anamosa. At approximately 2:30 in the morning, Mensen was pulled over and arrested for OWI, second offense. At the time of his arrest, Mensen's blood-alcohol content was .176, more than twice the legal limit. Mensen's driver's license was revoked due to the offense. As a result, the Department assigned him to desk duty. Mensen subsequently sought out a peer-support program offered by the

Department.  The Department's administrative investigation was suspended while Mensen's criminal proceedings proceeded.  Mensen pled guilty to OWI, second offense, in late July and informed the Department of the same.

On August 8, the Department gave Mensen notice that he was under formal investigation.  An administrative interview was conducted on August 13, during which Mensen largely admitted to the events surrounding his arrest.  The officer who conducted the interview sent a memo to the Department's disciplinary board, detailing the charges against Mensen, the evidence assembled, and the policies Mensen had violated.  The board unanimously recommended termination.

The Department provided Mensen a notice of administrative hearing before Chief of Police Wayne Jerman.  The notice included the facts of Mensen's offense and alleged violations of Iowa law and Department policies.  Mensen and his counsel attended the hearing.  Jerman issued a detailed written decision on September 24.  The decision included the factual basis for the allegations, namely the events surrounding Mensen's arrest.  It also included the provisions of Iowa law and Department polices violated by Mensen.[1]  Because of those violations, Mensen's employment with the Department was terminated.

Mensen appealed the termination decision to the Commission.  The Commission held an in-person hearing on December 18.  During the hearing, which lasted approximately nine hours, Mensen presented evidence suggesting

---

[1] Jerman determined that Mensen violated two provisions of Iowa law: Iowa Code section 123.46 (2019), public intoxication, and section 321J.2, operating while intoxicated.  He also determined Mensen violated several provisions of the Department's code of conduct, including rules related to violating criminal law, incompetence, off-duty intoxication, obedience to rules, and obedience to laws and orders.

he suffered from mental illness and alcohol abuse, both of which may have been exacerbated by a particularly difficult work week in the days leading up to his arrest. The Commission issued its written decision on March 16, 2020. The entirety of the decision reads:

> This matter came on for hearing before the Cedar Rapids Civil Commission on December 18, 2019. The City of Cedar Rapids was represented by Assistant City Attorney Elizabeth Jacobi. Austin Mensen was represented by Attorney Skylar Limkemann.
> After considering the testimony of the witnesses and examining the exhibits submitted by the City of Cedar Rapids, and the Appellant on December 18, 2019, it is the Conclusion of the Cedar Rapids Service Commission that the decision of Police Chief Wayne Jerman be affirmed.

Mensen appealed to the district court, pursuant to Iowa Code section 400.27(3). Mensen primarily contended the Commission erred by failing to provide sufficient written findings of fact and conclusions of law. The district court affirmed Mensen's termination on February 25, 2021. Mensen appeals.

## II. Standard of Review

We review appeals from a municipal civil service commission de novo. *See* Iowa Code § 400.27(3) (determining the scope of review is "de novo appellate review without a trial or additional evidence"). This standard "requires us to give weight to the findings of the commission, to review whether the sanction was warranted and restricts us to the record made at the commission level." *Milligan v. Ottumwa Civ. Serv. Comm'n*, No. 18-1810, 2019 WL 5792655, at *5 (Iowa Ct. App. Nov. 6, 2019).

## III. Discussion

Mensen raises two claims on appeal. First, he alleges the Commission's order failed to include written findings of fact and conclusions of law, violating both

the Commission's own rules and what Mensen contends should be Iowa law.[2] He also claims the Commission's decision was arbitrary.

### A. Written Order Requirements

#### 1. Error Preservation

As a preliminary matter, the Commission contends Mensen failed to preserve his claim that the order failed to include sufficient written findings of fact and conclusions of law. Instead, the Commission suggests he preserved only his claim that the order was not specific enough. We disagree with the Commission's preservation argument. First, the bifurcation of Mensen's claims by the Commission appears to be a distinction without a difference—it is difficult to imagine how the Commission could have been more specific in their order without including additional findings of fact and conclusions of law. While we do require an issue to be both raised by the party and decided by the district court, we do not require hyper-technical challenges like the one suggested by the Commission. *See Segura v. State*, 889 N.W.2d 215, 219 (Iowa 2017).

Moreover, Mensen raised the claim both in his brief and at oral arguments to the district court.[3] The district court understood Mensen's claim, noting,

---

[2] We note that Mensen does not contend the Commission violated his due process rights by failing to provide sufficient written findings of fact or conclusions of law. Rather, he asks this court to extend our case law to require written findings for municipal civil service commissions on non-due process grounds.

[3] For instance, the argument section in his brief before the district court claims, "This [c]ourt should reverse the Commission's decision because it failed to make findings of fact or conclusions of law in its written decision." Similarly, at oral argument before the district court, Mensen's attorney noted,

> [T]hat's exactly what we are requesting the [c]ourt to do in this case, to specifically require the Commissioner to make findings on all of the issues presented in the adjudicatory proceeding before it . . . state the evidence that the Commission relied upon in making those

"[Mensen] argues that the [c]ourt should reverse [the Commission's] decision because it failed to make findings of fact or conclusions of law in its written decision." Mensen raised the issue, and the district court decided it. Error was preserved. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002). We turn to the merits of Mensen's claim.

## 2. Iowa Requirements for Written Findings

Mensen claims the Commission failed to include sufficient findings of facts and conclusions of law in its written order. He asks this court to find a municipal civil service commission is required to include written findings in its order and determine the Commission's order failed to meet this standard.

Mensen rests his claim on a string of cases starting in 1968. That year, our supreme court held that administrative agencies, "even apart from any statutory mandate, [must] make findings of fact on issues presented in any adjudicatory proceeding." *Cedar Rapids Steel Transp., Inc. v. Iowa State Com. Comm'n*, 160 N.W.2d 825, 837 (Iowa 1968). Such findings must be sufficient to enable judicial review and inform the parties of what they are allowed or required to do. *Id.* However, the court also noted that "ultimate findings of fact suffice. . . . [T]hose findings are to be broadly and liberally construed . . . [and] [i]n case of doubt they will be construed to uphold rather than defeat the judgment." *Id.* at 838. The supreme court subsequently applied the principles enunciated in *Cedar Rapids Steel* to the worker's compensation commissioner, *Catalfo v. Firestone Tire & Rubber Co.*, 213 N.W.2d 506, 509 (Iowa 1973), and the state board of educational

---

findings . . . [and] specify in detail the reasons for the Commission's conclusions.

examiners, *Erb v. Iowa State Bd. of Pub. Instruction*, 216 N.W.2d 339, 342 (Iowa 1974).

The Iowa legislature passed the Iowa Administrative Procedure Act in 1974, with the purpose of providing "a minimum procedural code for the operation of all state agencies." Iowa Code § 17A.1(2). However, the Act does not apply to municipal administrative bodies. Iowa Code § 17A.2(1) ("'Agency' does not mean . . . a political subdivision of the state or its offices and units."). Thus, its provisions are not applicable to the case at hand. The supreme court relied on the Iowa Administrative Procedure Act when it declined to extend the principles from *Erb*, and by extension, *Cedar Rapids Steel*, to a city council. *See Dunphy v. City Council of City of Creston*, 256 N.W.2d 913, 920 (Iowa 1977) ("The principles enunciated in *Erb* have been superseded by chapter 17A . . . . Plaintiffs have not established as a matter of law [the city council] was required to make findings of fact in conjunction with [its decision].").

Two years later, the supreme court applied *Erb*'s reasoning to require a county board of adjustment to issue written findings on the merits of its decision. *Citizens Against Lewis and Clark (Mowery) Landfill v. Pottawattamie Bd. of Adjustment*, 277 N.W.2d 921, 924-925 (Iowa 1979). The court's reasoning is worth quoting at length:

> In view of the careful safeguards set up in the adoption of the Administrative Procedure Act, we find it difficult to permit other governmental agencies, even though not covered by that statute, to operate with [n]o rules and without established procedural guidelines. We hold that the failure to adopt rules as mandated by both the statute and [the city's local ordinance] invalidates the board action.. . . There is no statutory requirement that the board [issue written findings on the merits]. However, there is no doubt such findings would be of great benefit, both to the trial court and to this

court on certiorari or appeal from the board's decisions. They would provide a ready basis for determining the reasons for the board's action and would help immeasurably in determining whether the result was reasonable or was, as is frequently claimed, arbitrary and capricious. It would also serve the additional purpose of sharpening the issues the parties should raise on appeal.

We have not applied the *Erb* rationale to board of adjustment cases, but we believe it is now time to do so. In reaching this conclusion, we rely strongly on the following statement in K. Davis, Administrative Law Treatise § 16.05 (2d ed. 1978):

> The practical reasons for requiring administrative findings are so powerful that the requirement has been imposed with remarkable uniformity by virtually all federal and state courts, irrespective of a statutory requirement. The reasons have to do with facilitating judicial review, avoiding judicial usurpation of administrative functions, assuring more careful administrative consideration, helping parties plan their cases for rehearings and judicial review, and keeping agencies within their jurisdiction.

These are compelling considerations which have persuaded us to adopt the rule that boards of adjustment shall make written findings of fact on all issues presented in any adjudicatory proceeding. Such findings must be sufficient to enable a reviewing court to determine with reasonable certainty the factual basis and legal principles upon which the board acted. This rule shall apply to board of adjustment proceedings after the date this opinion is filed.

*Id.* at 925 (internal citations omitted).

This board-of-adjustment exception to the general inapplicability of *Erb* continues to be recognized by our courts. *See Bontrager Auto Service, Inc. v. Iowa City Bd. Of Adjustment*, 748 N.W.2d 483, 488 (Iowa 2008); *Palensky v. Story Cnty. Bd. of Adjustment*, No. 19-0349, 2020 WL 1879711, at *3 (Iowa Ct. App. Apr. 15, 2020). It has not been extended to any other municipal governments or agencies.

Mensen asks us to utilize those cases to declare municipal civil service commissions must issue written findings of fact and law with some level of specificity. However, Mensen concedes his claim requires this court to extend

case law beyond its current scope. It is not the proper role for this court to create new law. *See, e.g.*, *Village at White Birch Town Homeowners Ass'n v. Goodman Assoc., Inc.*, No. 11-1842, 2012 WL 5356045, at *4 (Iowa Ct. App. Oct. 31, 2012) (declining to extend a doctrine beyond current case law, "leaving that determination to our supreme court"); *State v. Grady*, No. 19-0865, 2020 WL 1049833, at *4 (Iowa Ct. App. Mar. 4, 2020) ("[W]e are not at liberty to overturn Iowa Supreme Court precedent"); *see also* Iowa R. App. P. 6.1101(3) (noting that this court ordinarily only determines cases "presenting the application of existing legal principles" or cases "presenting issues that are appropriate for summary disposition"). While the principles enunciated in cases like *Cedar Rapids Steel*, *Erb*, and *Citizens* may have a basis that could apply to cases like this one,[4] our court can neither extend case law beyond its current scope nor create new law.

We further note the adoption of a requirement for written findings to boards of adjustment was applied prospectively, rather than retrospectively. *See Citizens*, 277 N.W.2d at 925 (noting that the requirement for written findings applied to boards of adjustment took effect "after the date this opinion is filed"). Thus, Mensen would be without retrospective relief.

And we find distinction in the cases cited by Mensen, specifically *Bontrager* and *Palensky*, as the cases cited by Mensen contain a standard of review relative to a certiorari request. The instant appeal requires the district court, as well as our court, to conduct an appellate de novo review rather than determine whether the

---

[4] The Commission strenuously argues that the principles do not apply to the case at hand, where there were no disputed facts or credibility determinations and the review is de novo.

agency's findings are supported by substantial evidence. Two of the reasons for requiring written findings, as outlined by the court in *Citizens*, were the avoidance of judicial usurpation of administrative functions and a review of certiorari, both factors absent in this appeal due to the de novo nature in the instant appeal. Thus, in the absence of any binding authority requiring municipal civil service commissions to issue written findings of fact with any particular level of specificity and the de novo review mandate for the district court and this court, we determine that Mensen's claim fails.

### 3. Failure to Follow Own Rules

Mensen contends the Commission failed to follow its own rules requiring written findings of fact and conclusions of law. Cedar Rapids Civil Service Commission Rule chapter IX, section 8(f) requires the Commission to "cause its findings and decision to be prepared in writing and signed by each Commissioner."

Mensen concedes that there is neither known Iowa case law nor statutory authority requiring a municipal civil service commission to abide by its own rules and procedures. He is limited to citing two cases from Illinois and Utah, neither of which support his claim.[5] We note that the failure to cite authority may render this claim waived. *See* Iowa R. App. P. 6.903(2)(g)(3). In any event, absent a statutory or constitutional basis to the contrary, municipalities are generally permitted to

---

[5] The Illinois case dealt with a state employee and the state administrative code, not a municipal employee and municipal agency rules. *Bell v. Civ. Serv. Comm'n.*, 515 N.E.2d 248, 252 (Ill. App. Ct. 1987). The Utah case requires a municipal agency to follow its own rules, but premises such a requirement on due process concerns. *Lucas v. Murray City Civ. Serv. Comm'n.*, 949 P.2d 746, 754 (Utah Ct. App. 1997). As noted previously, Mensen does not allege a violation of his due process rights.

regulate their own affairs. *See Madden v. City of Iowa City*, 848 N.W.2d 40, 49 (Iowa 2014) (noting how, subject to limited statutory and constitutional limitations not applicable here, municipalities are generally afforded home rule, which gives municipalities "the power to determine local affairs as they see fit"); *see also* Iowa Constitution article III, § 38A (constitutional provision establishing home rule); Iowa Code § 364.3 (legislative exceptions to general home rule powers). It is up to the legislature, not this court, to create additional exceptions. Accordingly, this claim fails.

### B. Was Mensen's Termination Arbitrary?

#### 1. Error Preservation

The Commission contends Mensen has failed to preserve his claim that his termination was arbitrary, in violation of section 400.27. "It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal." *Meier*, 641 N.W.2d at 537. Here, the district court discussed the issue, finding "the record clearly sets forth abundant evidence to support [Mensen's] termination." However, the court's discussion appears to be in the context of Mensen's claim that appellate review of a termination is impossible without further written findings. For instance, the court did not include the issue when summarizing Mensen's claims on appeal.

Mensen never raised the issue for the district court's consideration. He did not brief the district court on the issue, nor did he discuss it at hearing before the district court. The closest Mensen's counsel comes to discussing whether his termination was arbitrary is by stating at the hearing that should the district court deny his first claim, he "[would] try to address the merits the best we can with the

record that we have." Such an offhanded, isolated comment is insufficient to preserve error. *See Soo Line R.R. Co. v. Iowa Dep't of Transp.*, 521 N.W.2d 685, 691 (Iowa 1994). Similarly, in his reply brief to the district court, he claimed to "reserve the right to address [whether the termination was arbitrary]" in the event the court did not reverse based on the Commission's failure to issue written findings. However, our courts have consistently held that a party cannot raise an issue for the first time in a reply brief. *See Sun Valley Iowa Lake Ass'n. v. Anderson*, 551 N.W.2d 621, 642 (Iowa 1996). And while Mensen did raise the issue before the Commission, his failure to raise it before the district court renders his claim unpreserved. *See* Thomas A. Mayes & Anuradha Vaitheswaran, *Error Preservation in Civil Appeals in Iowa: Perspectives on Present Practice,* 55 Drake L.Rev. 39, 47 (2006) (noting how in administrative proceedings, claims must be raised before the commission and district court to preserve error). Thus, this claim is unpreserved.

### 2. Merits

Even if Mensen had preserved error, Mensen's termination was not arbitrary. Section 400.18 permits termination when the employee engages in "an act . . . that is in contravention of law, city polices, or standard operating procedures, or in the judgment of . . . the chief of police . . . is unsuitable or unfit for employment." Mensen concedes his conduct violated both the law and the policies of the Cedar Rapids Police Department. He claims that mitigating factors, including the trauma he experienced prior to his arrest, mental illness, and relatively strong work history, weigh against termination but were not considered by Chief Jermen, which renders the decision arbitrary.

The legislature did not define the terms in section 400.18, but we look to the Department's rules and code of conduct for guidance when determining whether an employee committed misconduct. *Lewis v. Civ. Serv. Comm'n. of Ames*, 776 N.W.2d 859, 862 (Iowa 2010). We consider the existence of mitigating factors when determining whether termination was proper. *See Dolan v. Civ. Serv. Comm'n. of City of Davenport*, 634 N.W.2d 657, 664 (Iowa 2001). However, we must also consider prior misconduct. *Id.* "[T]he primary objective of [the statute] is to protect the public interest." *Id.* "The image presented by police personnel to the general public is 'vitally important to the police mission.'" *Civ. Serv. Comm'n of Coralville v. Johnson*, 653 N.W.2d 533, 538 (Iowa 2002) (citation omitted). Accordingly, "police officers must earn and maintain the public trust at all times by conducting themselves with good judgment and sound discretion." *Id.* Further, because police departments "are akin to paramilitary organizations . . . discipline must be strictly enforced." *Id.* (citation omitted).

Mensen's conduct was detrimental to the public interest. Because of his arrest, Mensen's driver's license was suspended for a year, limiting his ability to engage in tasks necessary to the job. This violates the Department's Code of Conduct, which requires officers to "maintain sufficient competency to properly perform their duties and assume the responsibilities of their position." Further, the job description for the position includes the ability to operate a motor vehicle as a requirement for the job. *See Lewis*, 776 N.W.2d at 864 (finding an employee's failure to maintain a driver's license due to an OWI arrest warranted termination when maintaining such a license was a required for the position under city policy). Moreover, police officers, as officials representing the police department and city,

are held to a high standard of conduct. Mensen's conduct, which occurred with individuals who knew he was a police officer, reflected poorly on the Department. And this is his second OWI. It is reasonable that the public's trust in the Department would be undermined given the knowledge that an officer did not follow the laws he is mandated to enforce.

We also reject Mensen's argument that the mitigating factors outlined by him were not considered in Chief Jermen's decision. The Commission does not appear to contest that Mensen had a relatively clean record prior to his arrest, nor that Mensen suffers from mental illness and alcohol-abuse disorder. However, the existence of mitigating factors does not automatically render a decision arbitrary. We highlight: "the *determinative factor* is whether [Mensen's] conduct was sufficiently detrimental to the public interest." *Dolan*, 634 N.W.2d at 664 (emphasis added). Given the necessity of maintaining the public's trust in police officers, the decision to terminate Mensen was not arbitrary.

**AFFIRMED.**